TUFE HODGE

*v.*

THE SANDS MANUFACTURING COMPANY,
*a corporation, et al.*

(No. 12549)

Submitted September 21, 1966. Decided October 25, 1966.

134

Browning, Judge, not participating.

*Campbell, McNeer, Woods, Bagley & Emerson, C. F. Bagley, R. G. McNeer,* for appellant.

*Jenkins, Schaub & Fenstermaker, John E. Jenkins, Jr., Kay, Casto & Chaney, George S. Sharp, Hoyt N. Wheeler,* for appellees.

HAYMOND, JUDGE:

The single question to be determined upon this appeal, granted upon the application of the plaintiff, Tufe Hodge, is whether, under the applicable statute of this State and upon the facts set forth in the complaint of the plaintiff and disclosed by the record, the Circuit Court of Cabell County, upon service accepted by the auditor in behalf of the nonresident defendants, The Sands Manufacturing Company, an Ohio corporation, and Therm-O-Disc. Inc., also an Ohio corporation, has jurisdiction to hear and determine this case as to them. The circuit court by final judgment rendered June 18, 1965, dismissed this case as to the nonresident corporate defendants on the ground of lack of jurisdic-

tion of that court to hear and determine the questions involved against those defendants.

The plaintiff is a resident of Huntington, Cabell County, West Virginia, and instituted this action to recover from the nonresident corporate defendants and the defendant Russell L. Blevins, a resident of Cabell County, damages to certain improved real estate on which were located two apartment buildings, at No. 1024 Eighth Street and rear of Eighth Street, in the City of Huntington, Cabell County, West Virginia, resulting from an explosion which occurred on August 24, 1963, and alleged to have been caused by the negligence of and the breach of implied warranty by the defendant The Sands Manufacturing Company in the design and construction of a hot water heater, the negligence of and the breach of implied warranty by the defendant Therm-O-Disc. Inc., in the design and construction of theromstats with which the heater was equipped when it was shipped to a dealer in Huntington from whom it was purchased by the plaintiff, and the negligence of the defendant Blevins, who installed the heater, or the combined negligence of all three defendants.

The facts disclosed by the record, including the complaint, the motion to dismiss of the defendant The Sands Manufacturing Company, and a supporting affidavit, and the motion to dismiss of the defendant Therm-O-Disc. Inc., and a supporting affidavit, are undisputed, and the question for decision is a question of law.

As previously indicated the plaintiff is the owner of certain real estate on Eighth Street, in the City of Huntington, on which is located an apartment building; and during the fall of 1962 he began the construction of another building to contain four apartments on the same real estate. In connection with the construction of the foregoing building the plaintiff employed the defendant Russell L. Blevins to do certain plumbing

work which included the installation of an electric hot water heater. Prior to December 21, 1962, the defendant The Sands Manufacturing Company, an Ohio corporation, engaged in the business of manufacturing, constructing and assembling in that state electric hot water heaters, manufactured the particular hot water heater Model No. 40SGC involved in this action. The principal place of business of that defendant is located in Cleveland, Ohio, and the electric hot water heaters which it manufactures were sold by it throughout the United States. The defendant Therm-O-Disc. Inc., also an Ohio corporation, is engaged in the business of manufacturing thermostats at its principal place of business in Mansfield, Ohio, for use in the operation of electric hot water heaters, and manufactured and sold to the defendant The Sands Manufacturing Company two thermostats which were installed in the above mentioned electric hot water heater.

Neither of the nonresident defendant corporations is authorized to do business in the State of West Virginia.

Sometime prior to December 21, 1962, the defendant The Sands Manufacturing Company, by virtue of a contract of sale and acting through an independent representative, sold the electric hot water heater involved in this action to a dealer, Emmons-Hawkins Hardware Company, of Huntington, West Virginia, and on December 21, 1962, that dealer sold the heater to the plaintiff and a short time afterwards the defendant Blevins installed it in one of the new apartments located on the rear portion of the real estate of the plaintiff on Eighth Street.

On the evening of August 24, 1963, the hot water heater exploded with the result that the new apartment building was destroyed and the other apartment building was materially damaged.

This action was instituted in the Circuit Court of Cabell County and personal service was obtained on the defendant Blevins. Service on the nonresident cor-

porate defendants was obtatined by serving the auditor of West Virginia, as provided in Section 71, Article 1, Chapter 31, Code, 1931, as amended.

On August 19, 1964, the defendant Therm-O-Disc. Inc. filed a motion and supporting affidavit to dismiss this action as to it on the ground that it is an Ohio corporation and not subject to service of process within this State; and on August 25, 1964, the defendant The Sands Manufacturing Company also filed a motior to dismiss this action as to it on the ground that it has never done business in this State and that service upon the auditor of this State was void and of no effect, and filed an affidavit in support of its motion.

The affidavit in support of the motion of the defendant Therm-O-Disc. Inc. to dismiss this action states that its principal place of business is located at Mansfield, Ohio; that it has not been authorized to do and has not done business in this State; that it has had no servants, agents or employees in this State; that it has not entered into any contract to be performed in whole or in part by any party to any contract in this State; that it has committed no tort in whole or in part in this State; that it has owned no property in this State; and that it has not appointed anyone as its attorney in fact for acceptance of process against it.

The affidavit in support of the motion of the defendant The Sands Manufacturing Company states that on or about June 30, 1962, another corporation purchased the defendant The Sands Manufacturing Company, which was an Ohio corporation; that the defendant The Sands Manufacturing Company was not authorized to do and has never done any business in this State; that it has never maintained any office in this State; that sales of its products were made f.o.b. Cleveland, Ohio; and that its sales to Emmons-Hawkins Hardware Company were conducted by another company which acted as an independent representative on a commission basis.

138

The statute, Section 71, Article 1, Chapter 31, Code, 1931, as amended, upon which the plaintiff seeks a recovery against the nonresident defendants in the Circuit Court of Cabell County, to the extent here pertinent, provides:

"Any foreign corporation which shall do any business in this State without having been authorized so to do pursuant to the provisions of section seventy-nine of this article shall be conclusively presumed to have appointed the auditor of the State as its attorney in fact with authority to accept service of notice and process on behalf of and upon whom service of notice and process may be made in this State for and upon every such corporation in any action or proceeding described in the next following paragraph of this section. * * * .

"For the purposes of this section, a foreign corporation not authorized to do business in this State pursuant to the provisions of section seventy-nine of this article shall nevertheless be deemed to be doing business herein if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, or if such corporation commits a tort in whole or in part in this State. The making of such contract or the committing of such tort shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the auditor pursuant to the next preceding paragraph of this section in any action or proceeding against such corporation arising from, or growing out of, such contract or such tort shall be of the same legal force and validity as process duly served on such corporation in this State."

The question of the jurisdiction of a court to hear and determine the liability of a nonresident foreign corporation upon a contract obligation upon personal service outside the state of the forum under statutes which confer such jurisdiction when such corporation makes a contract to be performed in whole or in part by

any party to such contract, or commits a tortious act in whole or in part, in the state of the forum, has been considered by this Court in two cases, in which the contract liability of a foreign corporation was involved, *Gavenda Brothers, Inc. v. Elkins Limestone Company, Inc.*, 145 W. Va. 732, 116 S. E. 2d 910, and *State ex rel. Coral Pools, Inc. v. Knapp*, 147 W. Va. 704, 131 S. E. 2d 81.

In the *Gavenda* case this Court held that a default judgment, rendered by an Illinois court under a statute which in part provides that any person who in person or through an agent in that state transacts business, commits a tortious act, uses, owns or possesses any real estate, or contracts to insure any person, property or risk, by reason of such acts, submits to the jurisdiction of the courts of that state as to any cause of action arising from such acts, was a valid judgment against a corporation of this State when it appeared that the defendant corporation, by its representative, in a certain county in Illinois, entered into an agreement with the plaintiff, a corporation of that state, to purchase from the plaintiff certain merchandise owned by it and located in that state and executed and delivered notes for the unpaid portion of the purchase price of such merchandise, which was either delivered to the defendant in Illinois or shipped to and received by it in Randolph County, West Virginia. In that case this Court said that statutory provisions conferring jurisdiction upon courts of a state to enter personal judgments upon personal service of process outside the State met the requirements of due process when the defendant to be served outside the State has had contacts with the state of the forum which make it reasonable that such defendant be required to defend the particular action brought against him in the state of the forum. In the *Gavenda* case the requisite minimum contacts were fully shown to exist.

In the *Coral Pools* case, which also involved the contract liability of a nonresident foreign corporation,

this Court held that when a foreign corporation which has not qualified to do business in this State in compliance with pertinent statutory provisions, is served with process pursuant to the provisions of the statute here involved, Section 71, Article 1, Chapter 31, Code, 1931, in an action instituted in a court of this State arising from a contract to be performed in this State and made by such foreign corporation with a resident of this State, a court of this State may obtain personal jurisdiction of such foreign corporation when the constitutional requirements of due process of law are satisfied and that such requirements are satisfied when it appears that the foreign corporation has had contacts with the state of the forum which are sufficient to make it reasonable and just, according to traditional notions of fair play and substantial justice, to compel the defendant corporation to defend itself in the court of the forum state.

This Court, however, has not in any prior case had occasion to consider the liability of a nonresident foreign corporation for a tort committed in whole or in part in this State under the provisions of the above quoted statute. Inasmuch as the plaintiff bases his claim for damages against the nonresident defendants upon the negligent design and construction of the hot water heater and the thermostats installed in such heater, which were manufactured by the nonresident foreign corporation defendants, and upon their implied warranty, the claim involved in this action may properly be considered as having arisen from the commission of a tort in whole or in part within the language of Section 71, Article 1, Chapter 31, Code, 1931, as amended. See *Keckler v. Brookwood Country Club,* 248 F. Supp. 645.

There is ample authority for the proposition that a tort is committed in the jurisdiction in which the injury occurs. *Dallas v. Whitney,* 118 W. Va. 106, 188 S. E. 766; *Aftanase v. Economy Baler Company,* 343 F. 2d

187; *Jarrett v. Wabash Railway Company,* 57 F. 2d 669, certiorari denied, 287 U. S. 627, 53 S. Ct. 80, 77 L. Ed. 544; *St. Clair v. Righter,* 250 F. Supp. 148; *Etzler v. Dille and McGuire Manufacturing Company,* 249 F. Supp. 1; *Keckler v. Brookwood Country Club,* 248 F. Supp. 645; *Hearne v. Dow-Badische Chemical Company,* 224 F. Supp. 90; *Hutchinson v. Boyd and Sons Press Sales, Inc.,* 188 F. Supp. 876; *Alabama Great Southern Railroad Company v. Carroll,* 97 Ala. 126, 11 So. 803, 38 Am. St. Rep. 163, 18 L.R.A. 433; *Gray v. American Radiator and Standard Sanitary Corporation,* 22 Ill. 2d 432, 176 N. E. 2d 761; 16 Am. Jur. 2d, Conflict of Laws, Section 72; Annotations I(2) and II(3), 77 A.L.R. 2d pages 1271 to 1275.

Since the epochal decision in 1945 of the Supreme Court of the United States in *International Shoe Company v. State of Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057, the standard of jurisdictional due process is that the foreign corporation defendant must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice. In the *International Shoe Company* case the defendant corporation was engaged in the manufacture and interstate sale of shoes. It had no offices in the State of Washington and made no contracts of sale or purchase there, the sales not being final until accepted by its St. Louis office. The corporation, however, had as many as thirteen salesmen who resided and sold its products in the State of Washington and solicited a large volume of business in that state and at times rented sample rooms in office buildings or hotels where the products of the corporation were exhibited to customers. In these circumstances the Supreme Court held that the required minimum contacts existed to sustain the jurisdiction of the Washington state court, under a statute of that state, to hear and determine an action against the nonresident International Shoe Company.

In *McGee v. International Life Insurance Company,* 355 U. S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223, decided in 1957, in which the Supreme Court expanded the theory of the *International Shoe Company* case, the defendant, a nonresident insurance company, solicited a reinsurance agreement with a resident of California. The offer to reinsure was accepted in and the insurance premiums were mailed from that state until the death of the insured. The court recognized an interest of California to provide effective redress for its residents when nonresident insurers refused to pay claims on insurance which they had solicited in that state and upheld the jurisdiction of the California court because the action was based on a contract which had substantial connection with that state.

In the later case of *Hanson v. Denckla,* 357 U. S. 235, 78 S. Ct. 1228, 2 L. Ed. 2d 1283, decided in 1958, the court did not apply the principle applied in the *International Shoe Company* case and the *McGee* case and distinguished that case from those cases. In the *Hanson* case a trust agreement was executed in Delaware by a trust company incorporated in that state and the settlor at the time was domiciled in Pennsylvania. The first relationship had by the state of Florida to the agreement occurred years later when the settlor became domiciled in that state and the Delaware trustee remitted the trust income to her there. The court said that the record disclosed no instances in which the trustee performed any acts in Florida that bore the same relationship to the agreement as the solicitation that occurred in the *McGee* case and that a suit in the Florida state court could not be said to be one to enforce an obligation that arose from a privilege exercised by the nonresident defendant in the state of Florida. In the opinion in the *Hanson* case, in discussing the jurisdictional requirement for the state of the forum to hear and determine a case against the nonresident defendant, the court used this language: "The unilateral activity of those who claim some rela-

tionship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.''

In *Erlanger Mills, Inc. v. Cohoes Fibre Mills, Inc.*, 239 F. 2d 502, a case involving the liability of a defendant upon breach of contract between the plaintiff, a North Carolina corporation, and the defendant, a New York corporation, the plaintiff agreed to purchase rayon garnet, a synthetic yarn, from the defendant to be used in the manufacturing plant of the plaintiff in North Carolina. The order was placed by the plaintiff after a visit by its representative to the plant of the defendant in New York where the order was accepted. The goods were sold f.o.b. Cohoes, New York. Soon after the shipment was received the plaintiff complained that the yarn was defective, and after several communications between the parties the general manager of the defendant went to North Carolina to discuss the complaint with the plaintiff. It was conceded that the defendant had never done any business in North Carolina prior to the foregoing transactions. Suit was instituted in a North Carolina court to recover damages in the amount of $17,000.00 and process was served upon the general manager of the defendant while he was in the office of the plaintiff in North Carolina discussing the claim. The case, which was subsequently removed to the Federal District Court, was based upon a North Carolina statute which provided:

''(a)  Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether

or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

"(3) Out of production, manufacture, or distribution of goods by such corporation with the reasonable expectation that those goods are to be used or consumed in this State and are so used and consumed, regardless of how or where the goods were produced, manufactured, marketed, or sold or whether or not through the medium of independent contractors or dealers."

The Circuit Court of Appeals, in affirming the action of the District Court in sustaining the motion to quash the service and dismissing the claim on the ground that the North Carolina statute was invalid as applied to the case, held that jurisdictional due process requires a foreign corporation to have certain minimum contacts with the state of the forum so that the maintenance of an action in the forum does not offend the traditional notions of fair play and substantial justice, and that the North Carolina court was without jurisdiction to entertain the case. In the opinion the court said: "Giving full scope to whatever liberalization results from the *International Shoe* case the principle there declared does not, in our view, sustain jurisdiction in the North Carolina courts, where the only contact has been a single interstate shipment into North Carolina under the circumstances above recited."

In *Mann v. Equitable Gas Company*, 209 F. Supp. 571, in which the facts closely resemble the facts in the case at bar, the United States District Court for the Northern District of West Virginia held that where a Texas corporation was not in, and had no property in, this State but manufactured pipe in Texas and sold it to a gas company which used it in this State where the pipe exploded and injured the plaintiff, the commission in West Virginia of the resultant tort did not establish the necessary minimum contacts to confer jurisdiction upon the court under the applicable stat-

ute, Section 71, Article 1, Chapter 31, Code, 1931, as amended.

To the same effect, upon somewhat similar facts, are the decisions in *Mueller v. Steelcase, Inc.*, 172 F. Supp. 416; *Hellriegel v. Sears Roebuck and Company*, 157 F. Supp. 718; *Johns v. Bay State Abrasive Products Company*, 89 F. Supp. 654; *Moss v. City of Winston-Salem*, 254 N. C. 480, 119 S. E. 2d 445.

In *State ex rel. Coral Pools, Inc. v. Knapp*, 147 W. Va. 704, 131 S.E. 2d 81, in discussing generally the application of the jurisdictional principle recognized in the *International Shoe Company* case after reviewing many cases decided since the decision in that case, this Court said: "From precedents previously referred to herein, certain guiding principles have become crystalized. A trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations. The amount and kind of activities which must be carried on by a foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the personal jurisdiction of a court in that state must be determined according to the facts and circumstances of each case. It must appear that the defendant corporation over which jurisdiction is asserted had minimum contacts with the state of such nature and extent as to render it consistent with traditional notions of fair play and substantial justice that it be compelled to defend itself in that state."

The facts in the case at bar, though involving a tort claim under the statute, closely resemble the facts in the *Erlanger* case in that in each instance a single transaction only was involved. In the *Erlanger* case the transaction occurred directly between the nonresident defendant and the resident plaintiff; in the case at bar the purchase of the hot water heater was made by the dealer Emmons-Hawkins Hardware Company from The Sands Manufacturing Company, the manu-

facturer of the article, and the heater was purchased by the plaintiff not from the manufacturer but from the dealer which made the delivery to the plaintiff. In short the contacts with North Carolina in the *Erlanger* case were more substantial than those of the nonresident defendants with this State, and though it is true that the minimum contacts for the requisite jurisdiction may result from a single transaction, as has been held in numerous cases, *Smyth v. Twin State Improvement Corporation,* 116 Vt. 569, 80 A. 2d 664, 25 A.L.R. 2d 1193; *Nelson v. Miller,* 11 Ill. 2d 378, 143 N. E. 2d 673; *Painter v. Home Finance Company,* 245 N. C. 576, 96 S. E. 2d 731; *Hutchinson v. Boyd and Sons Press Sales, Inc.,* 188 F. Supp. 876, it is clear that the facts involved in the case at bar do not constitute the requisite minimum contacts to confer jurisdiction under the current statute upon the Circuit Court of Cabell County to hear and determine this action. To hold otherwise would offend the traditional notions of fair play and substantial justice which are essential to jurisdiction under the principle enunciated by the Supreme Court of the United States in the *International Shoe Company* case and subsequent decisions.

In the decision of this case, this Court recognizes and emphasizes that the determination of the question whether the type of activity conducted within the State by a nonresident is sufficient to satisfy the requirement of minimum contacts depends upon the specific facts in each particular case. See *Perkins v. Benquet Consolidated Mining Company,* 342 U. S. 437, 72 S. Ct. 413, 96 L.Ed. 485; *Gray v. American Radiator and Standard Sanitary Corporation,* 22 Ill. 2d 432, 176 N. E. 2d 761; *Farmer v. Ferris,* 260 N. C. 619, 133 S. E. 2d 492. As stated in the *Gray* case: "The question cannot be answered by applying a mechanical formula or rule of thumb but by ascertaining what is fair and reasonable in the circumstances."

The only facts disclosed by the record to establish jurisdiction in the Circuit Court of Cabell County to

hear and determine this action against the nonresident corporation defendants are that the defendant The Sands Manufacturing Company manufactured and sold the hot water heater which exploded in the apartment building of the plaintiff and caused the damages of which the plaintiff complains; that the defendant Therm-O-Disc. Inc. manufactured and sold to the defendant The Sands Manufacturing Company the two thermostats which were installed in the heater; that the heater as so equipped was subsequently sold by the defendant The Sands Manufacturing Company not to the plaintiff but to an independent dealer, Emmons-Hawkins Hardware Company; that the plaintiff purchased the heater from that dealer, after which it was installed by the defendant Blevins in an apartment owned by the plaintiff. There is no showing that any representative of either of the nonresident corporation defendants was at any time present in West Virginia in connection with the manufacture or sale of the heater or with respect to any other transaction, and it affirmatively appears that neither of them was authorized to do business in this State and that neither of them had at any time done business in this State or maintained a place of business or entered into any contract to be performed by any party to it, or owned any property, or appointed anyone as its attorney in fact for the acceptance of process of any kind in this State. As previously indicated those facts are wholly insufficient to establish the minimum contacts in this State which are necessary to confer jurisdiction under the statute in its courts over nonresident defendants who are not personally served with process within the State.

The plaintiff cites and relies upon, among others, the cases of *St. Clair v. Righter,* 250 F. Supp. 148; *Etzler v. Dille and McGuire Manufacturing Company,* 249 F. Supp. 1; *Jackson v. National Linen Service Corporation,* 248 F. Supp. 962; *Keckler v. Brookwood Country Club,* 248 F. Supp. 645; *Hearne v. Dow-*

*Badische Chemical Company,* 224 F. Supp. 90; *Hutchinson v. Boyd and Sons Press Sales, Inc.,* 188 F. Supp. 876; *Gray v. American Radiator and Standard Sanitary Corporation,* 22 Ill. 2d 432, 176 N. E. 2d 761. The facts in each of those cases, except the *Gray* case, the *Hearne* case and the *Hutchinson* case, are clearly distinguishable from the facts in the case at bar.

In *St. Clair v. Righter,* 250 F. Supp. 148, in which the United States District Court for the Western District of Virginia, under a somewhat similar Virginia statute conferring jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's (1) transacting any business in the state; (2) contracting to supply services or things in the state; (3) causing tortious injury by an act or omission in the state; or (4) causing tortious injury in the state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, held that it had jurisdiction in personam over nonresident defendants in an action by a corporate president domiciled in Virginia for defamation arising from publication in Virginia of alleged defamatory letters which had been written and mailed by defendants outside of Virginia to corporate stockholders in that state and elsewhere. The facts in that case, unlike the facts in the case at bar, were sufficient to satisfy the requirement of minimum contacts in Virginia.

In *Etzler v. Dille and McGuire Manufacturing Company,* 249 F. Supp. 1, in which, under the same Virginia statute, the United States District Court held that it had jurisdiction over an Indiana corporation in an action to recover for injury sustained by the plaintiff, a citizen of Virginia, while operating a riding rotary lawn mower which had been manufactured by the defendant, the Court found from the evidence that the defendant derived substantial revenue from the

sale of lawn mowers in Virginia and engaged in a persistent course of conduct by shipping the lawn mowers to purchasers in that state and that it clearly appeared that the defendant might reasonably have expected the plaintiff to use and be affected by the product which the defendant sold in Virginia. Those facts, unlike the facts in the case at bar, were sufficient to create the necessary minimum contacts in that state.

In *Jackson v. National Linen Service Corporation*, 248 F. Supp. 962, in which, under the same Virginia statute, the United States District Court held that it had jurisdiction over an Illinois corporation in an action against it to recover for an injury sustained by the plaintiff, a citizen of Virginia, while using a solvent produced by such foreign corporation when it appeared that sales in Virginia by the nonresident manufacturer of the defective solvent amounted to approximately $25,000.00 annually of an annual total of $4,000,000.00 or $5,000,000.00 and that the nonresident manufacturer was aware that its products were being sold in Virginia and could reasonably expect that the person injured would use and be affected by such products. The foregoing facts, unlike the facts in the case at bar, were sufficient to create the necessary minimum contacts in that state.

In *Keckler v. Brookwood Country Club*, 248 F. Supp. 645, an action in tort for personal injuries sustained by the plaintiff, a resident of Illinois, when a motorized golf cart, manufactured by an Indiana corporation and sold in that state to a company which in turn delivered it in Illinois, injured the plaintiff, the defendant, an Indiana corporation, moved to quash the service of process as to it. In sustaining the motion to quash the United States District Court for the Northern District of Illinois held that an allegation in the count against the Indiana corporation that it was engaged in the business of manufacturing and distributing, for use by members of the golfing public, the

gasoline driven golf cart which injured the plaintiff did not justify an inference that such corporation was doing business to the extent necessary to subject it to the jurisdiction of a court in Illinois. In that case, however, the court indicated that if the count had alleged that the manufacturer sold its product in such manner that it would be resold from dealer to dealer and transported from state to state it would have subjected itself to the jurisdiction of a court of a state in which a resident of that state was injured by such product.

In the cases of *Gray v. American Radiator and Standard Sanitary Corporation*, 22 Ill. 2d 432, 176 N. E. 2d 761, *Hearne v. Dow-Badische Chemical Company*, 224 F. Supp. 90, and *Hutchinson v. Boyd and Sons Press Sales, Inc.*, 188 F. Supp. 876, upon facts which closely resemble the facts in the case at bar, the courts adopted a different view from that reached by this Court in the decision of this case and, though this Court has given due consideration to those decisions, it is not disposed to accord them convincing force or effect in its decision of the case at bar.

*Gray v. American Radiator and Standard Sanitary Corporation*, 22 Ill. 2d 432, 176 N. E. 2d 761, was a suit instituted in the Circuit Court of Cook County, Illinois, by a resident of that state to recover for injuries sustained by the plaintiff from an explosion of a hot water heater. A safety valve incorporated in a heater in Pennsylvania was manufactured in Ohio by Titan Valve Manufacturing Company, a foreign corporation, and was subsequently sold to a consumer in Illinois. On appeal from an order of the trial court dismissing the foreign corporation, the Supreme Court of Illinois held that the foreign corporation which manufactured the safety valve was subject to the jurisdiction of the Illinois court after service of process was made upon its registered agent in Ohio. In the opinion the court said: ''In the case at bar defendant does not claim that the present use of its

product in Illinois is an isolated instance. While the record does not disclose the volume of Titan's business or the territory in which appliances incorporating its valve are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this state. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this state, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves.'' The foregoing statements tend to indicate, though insufficient, a ground of distinction between the holding in that case and the holding of this Court in the case at bar.

Without attempting to reconcile the conflicting views expressed in numerous decisions with respect to the question of the jurisdiction of a court to entertain an action against a nonresident who makes a contract to be performed in whole or in part by any party to such contract or commits a tort in whole or in part in the state of the forum, and being mindful that the determination of the existence of the minimum contacts essential to confer jurisdiction upon a court of the state of the forum depends upon the specific facts of each particular case, this Court, upon the undisputed facts disclosed by the record in this case, holds that when each of two foreign corporations is not authorized to do business, has no representative, has not done business, or maintained a place of business, or entered into any contract to be performed by any party to such contract, or owned any property, or appointed anyone as its attorney in fact for the acceptance of process, in this State, but one of which foreign corporations in another state manufactured and sold thermostats to the other foreign corporation which in the same state manufactured a hot water heater in which the thermostats were installed and sold such heater to an independent dealer in this State

which subsequently sold and delivered it to the plaintiff, a resident of this State, who caused it to be installed in an apartment of the plaintiff where it exploded and caused substantial damage to the property of the plaintiff, and neither foreign corporation has engaged in any persistent course of conduct in selling such heaters to purchasers or engaged in other transactions in this State, the contacts of such foreign corporations in this State, disclosed by the foregoing acts of such foreign corporations, do not satisfy the essential requirement that there must be minimum contacts by such foreign corporations with this State to confer jurisdiction upon a court of this State, under Section 71, Article 1, Chapter 31, Code, 1931, as amended, to entertain an action instituted by the resident plaintiff to recover from such defendant foreign corporations damages caused by a tort committed in whole or in part by them in this State.

The judgment of the Circuit Court of Cabell County dismissing the foreign corporation defendants is affirmed.

*Affirmed.*