EUGENE F. CHASE, EXECUTOR, *etc.*,

*v.*

GREYHOUND LINES, INC., *a corporation*, HENDERSON
MANUFACTURING COMPANY, *a corporation*, RIDGE RUNNER
INDUSTRIES, INC., *a corporation*, STEPHEN E. CHASE

*and*

HENDERSON MANUFACTURING COMPANY, *a corporation*,

*v.*

BROADWAY ELKHART COMPANY, *etc.*

(No. CC891)

Decided January 21, 1975.

*Frank V. Sansalone* for plaintiff (Eugene F. Chase).

*Furbee, Amos, Webb & Critchfield, Bill B. Atkins* for third-party defendant (Broadway Elkhart Company).

CAPLAN, JUSTICE:

Eugene F. Chase, on July 2, 1971, purchased from defendant, Ridge Runner Industries, Inc., a 1968 Ford truck upon which was mounted a camper box. Ridge Runner Industries, Inc. purchased said camper box from Henderson Manufacturing Company, a corporation, the manufacturer and designer of said box. Ridge Runner was the distributor for Henderson in this state.

On July 19, 1971, while plaintiff's decedent, Rosalie R. Chase, was riding in the camper box, the Ford truck on which it was mounted collided with a Greyhound bus and Rosalie R. Chase suffered a fatal injury. The plaintiff alleges in his complaint that defendant Henderson Manufacturing Company and defendant Ridge Runner Industries, Inc. knew at the time of the sale that the camper box was not suitable and reasonably fit for the purpose for which it was intended to be used; that they knew that Eugene F. Chase and the members of his household, including the plaintiff's decedent, would rely upon the skill and judgment of said defendants and upon their warranty in purchasing said camper box and that the plaintiff's decedent did rely upon the defendants' warrant. It is further alleged in said complaint that the collision and death of the plaintiff's decedent was caused by the negligence of each of the drivers of the vehicles and by reason of the faulty design of the door to the camper box from which Rosalie R. Chase fell to her death. Basically, it was charged in the complaint that the defendant, Henderson Manufacturing Company, negligently designed, constructed and manufactured said camper box making it unsafe for its intended use;

that the design and structure of the door, door lock and door frame were defective and inadequately designed to withstand an impact with a reasonable degree of safety; that the plaintiff's decedent was unaware of the defects in the camper box which made it unsafe for its intended use; and that the plaintiff's decedent was fatally injured as a direct and foreseeable result of the negligent, defective and inadequately designed construction and manufacture of said camper box. As aforesaid, the complaint further charges that the collision and fatal injury to the plaintiff's decedent was caused by the negligence of Stephen E. Chase, driver of the vehicle in which the deceased was riding, and the negligence of Samuel S. Nazzareno, the driver of the defendant Greyhound bus.

Subsequent to the filing of the aforesaid complaint defendant Henderson Manufacturing Company filed a third-party complaint against Broadway Elkhart Company, a division of Elixir Industries, Inc. In the third-party complaint Henderson noted that Chase, the plaintiff, complained that the door, door lock and door frame of the camper were defective; that Henderson had purchased the door, door lock and door frame from Broadway Elkhart Company and had installed them in accordance with the instructions of Broadway. Henderson therein further alleges that Broadway, the third-party defendant, negligently designed, constructed and manufactured said door, door lock and door frame thereby causing the injury to and death of the plaintiff's decedent. Therefore, says Henderson in its third-party complaint, any damages sustained by the plaintiff were the direct and proximate result of the negligence of the third-party defendant, Broadway Elkhart Company.

Upon the filing of the third-party complaint the third-party defendant Broadway Elkhart, appeared specially by counsel and moved that the third-party complaint be dismissed for the following reasons: (1) the complaint does not allege any liability between Broadway Elkhart Company and the third-party plaintiff; (2) the third-party complaint wholly fails to allege sufficient facts show-

ing that the court had *in personam* jurisdiction over the said third-party defendant, Broadway, which is a subsidiary of a foreign corporation not authorized or licensed to do business in the State of West Virginia; that the court lacks jurisdiction because at the time the alleged cause of action arose Broadway was not incorporated under the laws of the State of West Virginia; was not licensed to do business in this state; and, was not subject to service of process or acceptance of service by the Auditor of the State of West Virginia as the summons and third-party complaint were attempted to be served. Further showing a lack of jurisdiction by the trial court was the fact that the third-party defendant, Broadway, did not commit any tort in whole or in part in the State of West Virginia or make any contract to be performed in whole or in part by any party thereto in the State of West Virginia as would subject a foreign corporation to service of process under *W. Va. Code*, 1931, 31-1-71, as amended.

The trial court upon consideration of the matters raised denied the motion of Broadway and upon the joint motion of the parties certified the following question in this Court:

> Did the Circuit Court of Marion County, West Virginia, obtain jurisdiction of the third-party defendant, Broadway Elkhart Company, by service of process on the Auditor of the State of West Virginia, if the said corporation was not licensed to do business and was not doing business in the State; had made no contracts to be performed in whole or in part in the State; had committed no tort in whole or in part in the State; had no servants, agents, or employees in the State; owned no property in the State; had appointed no one as its attorney in fact for acceptance of process in the State; had not manufactured, sold, offered for sale or supplied a product which caused injury to any person or property, in the State; and which corporations only contact, if any, with the State was that its product came into the State of West Virginia as a

component part of the third-party plaintiff's product.

By its order entered on December 20, 1973 the court overruled the motion to dismiss theretofore filed by Broadway Elkhart Company, the third-party defendant. In said order the court also overruled several other motions to dismiss which motions were filed by each of the parties defendant.

After the above question was certified to this Court counsel for the plaintiff filed a motion to dismiss such certification. The plaintiff asserts that the case was not certified to this Court in compliance with the rules of the Supreme Court of Appeals, Rule 2, § 4, wherein it is stated: "All motions to docket cases certified shall be presented and filed in the office of the clerk of this court within sixty days of the date of the order of certification entered in the circuit court ... Motions to docket cases certified that do not comply with the provisions of this rule shall not be considered." The order certifying the above question to this Court was dated February 19, 1974 and was filed in this Court on February 22, 1974. The order overruling the motion to dismiss was dated December 20, 1973. It is the contention of the plaintiff that the actual order of certification was dated December 20, 1973 and that the order of certification not having been filed until February 22, 1974, compliance with the aforesaid Rule 2, § 4 of the Rules of the Supreme Court of Appeals was not accomplished.

An examination of the orders referred to by the plaintiff and of the aforesaid Rule 2, § 4 of the Rules of this Court clearly mandates that the motion to dismiss the certification be overruled. The order of the Circuit Court of Marion County dated December 20, 1973 served many functions. It overruled Broadway Elkhart Company's motion to dismiss on the ground that it was not subject to the court's jurisdiction; it overruled Greyhound Lines' motion to dismiss; it overruled Henderson Manufacturing Company's motion to dismiss; and it overruled Ridge Runner Industries' motion to dismiss. The court

in that order then proceeded to direct and authorize a proper certificate to be prepared and directed to the Supreme Court of Appeals setting forth certain questions contained in the motion of Broadway Elkhart Company which it made in relation to the third-party complaint. However, the actual and only order of certification was not entered by the Circuit Court of Marion County until February 19, 1974 and that order was filed in this Court on February 22, 1974. Clearly, this motion to docket this certified case, having been made on February 22, 1974, was within sixty days of the date of the order of certification which was entered in the circuit court on February 19, 1974. The position of the plaintiff is without merit and his motion to dismiss the certification is overruled.

We come now to the question certified to this Court. Did the Circuit Court of Marion County, in the circumstances described in the certified question, obtain jurisdiction of the third-party defendant, Broadway Elkhart Company? The question contained in the court's order of certification, entered upon the joint motion of the parties, relates the following concerning Broadway Elkhart Company: (1) it was not licensed to do business in West Virginia; (2) it was not doing business in this state; (3) it had made no contracts to be performed in whole or in part in this state; (4) it had committed no tort in whole or in part in this state; (5) it had no servants, agents or employees in this state; (6) it owned no property in this state; (7) it had appointed no one as its attorney in fact for acceptance of process in this state; (8) it had not manufactured, sold, offered for sale or supplied a product which caused injury to person or property in this state; (9) the only contact Broadway had with the state, if any, was that its product came into this state as a component part of the third-party plaintiff's product.

For a court to obtain jurisdiction of a foreign corporation it is essential that such corporation have certain minimum contacts with this state. This was cogently expressed in Point 1 of the Syllabus of *Hodge v. The*

*Sands Manufacturing Company*, 151 W. Va. 133, 150 S.E.2d 793 (1966), as follows:

> The standard of jurisdictional due process is that a foreign corporation must have such minimum contact with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice.

The *Hodge* case presented a question identical to that raised in the instant case. There the foreign corporation, of which the plaintiff attempted to obtain jurisdiction, manufactured a product which was brought into this state as a component part of an item sold in this state by another corporation. It was held that such foreign corporation's contacts with this state "do not satisfy the essential requirement that there must be minimum contacts by such foreign corporations with this State to confer jurisdiction, upon a court in this State ..."

The substance of the decision of the court in *International Shoe Company v. State of Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945) is reflected in the above-quoted syllabus point in *Hodge v. The Sands Manufacturing Company, supra*. It was noted in *International Shoe* that historically the jurisdiction of courts to render an *in personam* judgment is grounded on their actual power over the defendant's person, making his physical presence within the territorial jurisdiction of the court a prerequisite to the rendition of such judgment. See *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565 (1877). Now, however, since statutory methods have been designed to serve process on foreign corporations, *in personam* judgments may be rendered against such corporations, even though an officer or agent thereof is not found within the jurisdiction. W. Va. Code, 1931, 31-1-71, as amended (31-1-15, as of July 1, 1975). In order to subject a defendant foreign corporation to an *in personam* judgment, due process requires only that such corporation have certain minimum contacts with the forum state "that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'".

In *Hodge v. The Sands Manufacturing Co.*, *supra*, quoting from *State ex rel. Coral Pools, Inc. v. Knapp*, 147 W. Va. 704, 131 S.E.2d 81 (1963), the Court said: "'The amount and kind of activities which must be carried on by a foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the personal jurisdiction of a court in that state must be determined according to the facts and circumstances of each case.'"

The factual situation in the instant case, with regard to the amount and kind of activities carried on in this state by Broadway Elkhart Company, a division of Elixir Industries, Inc., a California created and based corporation, is clearly detailed in the question certified to this Court. Furthermore, the nine points hereinabove enumerated plainly show the extent of contact, if any, Broadway had with this state. The facts, thus revealed, are wholly insufficient to establish the minimum contacts necessary.

We, therefore, answer the question certified to this Court in the negative and the ruling of the Circuit Court of Marion County is reversed.

*Reversed.*