256 S.E.2d 432 (1979)
Patricia Ann BRENT
v.
The BOARD OF TRUSTEES OF DAVIS AND ELKINS COLLEGE, Martha Ann Phipps, and Corning Glass Works, a corporation.
No. 13908.
Supreme Court of Appeals of West Virginia.
July 10, 1979.
*433 E. A. Zagula, Leonard Z. Alpert, Weirton, for appellant.
Lester C. Hess, Jr., Paul T. Tucker, Bachmann, Hess, Bachmann & Garden, Wheeling, George J. Anetakis and Carl N. Frankovitch, Frankovitch & Anetakis, Weirton, for appellees.
HARSHBARGER, Justice:
Patricia Ann Brent was injured when a glass test tube exploded during a chemistry laboratory session at Davis and Elkins College in Elkins, Randolph County, West Virginia. She sued the college; Martha Ann Phipps, the laboratory supervisor; and Corning Glass Works, manufacturer of the tube, in Hancock County Circuit Court.[1] Whatever legal connection there is between Hancock County and the cause of action must be Corning's alleged activity there. The court dismissed her complaint because it lacked venue.
W.Va.Code, 56-1-1 applies:
Any action or other proceeding at law or suit in equity, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:
(a) Wherein any of the defendants may reside, . . . or
(b) If a corporation be a defendant, wherein its principal office is, or wherein its mayor, president or other chief officer resides; or if its principal office be not in this State, and its mayor, president or other chief officer do not reside therein, wherein it does business; . . .. [Our emphasis]
So a possible basis for venue in Hancock County is Code, 56-1-1(b), if Corning does business there.
The term "does business" in this section has never been clearly defined.[2] Appellant urges that it means "minimum contacts" akin to International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), criteria for subjecting foreign corporations to a state's jurisdiction. See, Schweppes U. S. A. Limited v. Kiger, W.Va., 214 S.E.2d 867 (1975). Appellees contend that we should adopt a definition that is more restrictive than those upon which jurisdiction is based.
Code, 31-1-15 defines "doing business" for jurisdiction over corporations operating in the state without certificates of authority:[3]
[A] foreign corporation not authorized to conduct affairs or do or transact business in this State pursuant to the provisions of this article shall nevertheless be deemed to be conducting affairs or doing *434 or transacting business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, (b) if such corporation commits a tort in whole or in part in this State, or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State notwithstanding the fact that such corporation had no agents, servants or employees or contacts within this State at the time of said injury. The making of such contract, the committing of such tort or the manufacture or sale, offer of sale or supply of such defective product . . . shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the secretary of State . . . in any action or proceeding against such corporation arising from, or growing out of, such contract, tort, or manufacture or sale, offer of sale or supply of such defective product shall be of the same legal force and validity as process duly served on such corporation in this State. [Our emphasis]
"Jurisdiction" and "venue" are closely related. They both control the place where a suit may be brought. "They are also similar in that some rules of jurisdiction and all rules of venue are formulated in terms of the geographical position of the court in which the action may be maintained.[4] Venue restrictions are designed to protect defendants from litigating in inconvenient forums. See Note, Federal Venue Over Corporations Under § 1391(c): Plaintiff Corporations, the Judicial District Limitation, and "Doing Business", 12 Ga.L.Rev. 296 at 298-99 (1978). Certainly, if a corporation can be subjected to state jurisdiction if it does certain acts in the state, any county in which it does them is a place where that jurisdiction can work. For years, jurisdiction was considered a "power" concept, Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877); Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), unrelated to the reasonableness of the forum except where in personam jurisdiction was sought. International Shoe Co. v. Washington, supra; Hanson, supra. A state court could exercise jurisdiction anywhere the defendant was present, had minimum contacts or had any property including intangible obligations. In 1977, the United States Supreme Court held that the International Shoe "minimum contacts" standards applied to in rem as well as in personam jurisdiction, Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), focusing on the relationship between the forum, the defendant and the controversy. The logical extension of Shaffer is that "general" power jurisdiction is dead and only "specific" jurisdiction centered on fundamental fairness survives. See Note, Civil Procedure-Concepts of Personal Jurisdiction Before and After Shaffer v. Heitner, 80 W.Va.L.Rev. 285 (1978). The similarity to venue considerations is obvious. See, vonMehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121 (1966); Traynor, Is This Conflict Really *435 Necessary?, 37 Texas L.Rev. 657 (1959); Ehrenzweig, The Transient Role of Personal Jurisdiction: The Power Myth and Forum Conveniens, 65 Yale L.J. 289 (1956). It is only logical that we use the Code, 31-1-15 elements upon which jurisdiction may be based to find what doing business is for venue purposes. Foreign corporations do business in a particular county under Code, 56-1-1(b) when they do any of those acts specified in Code, 31-1-15 in that county and may be sued in that county on any cause of action arising from those acts.[5]
The practicalities of venue, in fact, would seem to dictate that once a corporation is authorized to do business in a state it could be sued in any county (Corning is authorized to do business in West Virginia); and if not authorized (or licensed) to do business but doing business nonetheless, it also could be sued in any county. It strains reason to suppose that determining proper venue should in these times depend upon any geographical factor, once state jurisdiction has attached. However, meaning once must be given to Code, 56-1-1(b) and application of West Virginia jurisdictional standards is the logical way to do it.
Is Corning Glass Works doing business in Hancock County, thereby making venue proper there?
The record is inconclusive. The trial court must decide if Corning Glass Works has made any contracts to be performed in whole or in part, by any party thereto, in Hancock County; if it has committed a tort in whole or in part in the County; or if it has manufactured, sold, offered for sale or supplied any product in defective condition and such product has caused injury to any person or property within Hancock County. These activities must be related to this particular cause about which the court's venue is questioned.
The judgment of the Circuit Court of Hancock County is reversed and this case remanded for proceedings consistent with this opinion.
Reversed and remanded.
NOTES
[1] All three defendants/appellees are amenable to service of process in the state. Corning Glass Works is a foreign corporation authorized to do business in West Virginia; Davis and Elkins College is in Randolph County, West Virginia; and Martha Ann Phipps resides in Randolph County.
[2] Both parties cite various West Virginia cases but we find no helpful precedent. The early cases, Hayman v. Monongahela Consolidated Coal & Coke Co., 81 W.Va. 144, 94 S.E. 36 (1917); Owen v. Appalachian Power Co., 78 W.Va. 596, 89 S.E. 262 (1916); Rorer v. Peoples Building, Loan & Savings Association, 47 W.Va. 1, 34 S.E. 758 (1899); and Quesenberry v. People's Building, Loan & Savings Association, 44 W.Va. 512, 30 S.E. 73 (1898), were all decided before currently accepted concepts of jurisdiction and venue had been developed and contain no clear discussion of venue standards. We do not find the later cases of Crawford v. Carson, 138 W.Va. 852, 78 S.E.2d 268 (1953) and Chase v. Greyhound Lines, Inc., W.Va., 211 S.E.2d 273 (1975) any more enlightening. Crawford involved proper venue of an action arising from an automobile accident when service was on the defendant by the nonresident motor vehicle operator "long arm" statute and the only possible place of venue was where the action arose because none of the provisions of Code, 56-1-1 were applicable. Chase involved only a jurisdictional issue and had no direct applicability to venue.
[3] Of course, there is no need for such definition where corporations have subjected themselves to state jurisdiction by obtaining authorization to do business here.
[4] J. Fleming and G. Hazard, Civil Procedure, 601-604, 606, (2d ed. 1977).

"Rules of jurisdiction have the following characteristics:
(1) They are formulated either in terms of the territorial extent of the court's authority or in terms of the subject matter of the action, and sometimes in terms of both of these factors;
(2) They regulate the authority of the court to hear and determine particular types of action, and
(3) Because these rules govern the authority of the court, non-compliance with them results in the judgment in the action being, under some circumstances, vulnerable to legal attack even after it has apparently become final."
Venue rules have these characteristics:
"(1) They are formulated in terms of the relationship between the subject matter of the action and the territorial location of the court;
(2) They confer a privilege upon the defendant to object to the action's being maintained in a court in which the venue is improper; and
(3) Because they are regarded as involving a privilege of the defendant rather than the authority of the court, noncompliance with them is an objection that must be taken at the threshold of the litigation and which is regarded as waived if not so taken."
[5] Our definition of venue "doing business" by reference to other concepts is not unique. The federal venue statute generally applicable to transitory civil actions, 28 U.S.C. § 1391(c), allows suit against a corporation in any district where it is doing business and uses language almost identical to Code, 56-1-1(b). When § 1391(c) was enacted in 1948 it abrogated the rule that a corporation could only be sued where it was incorporated. In re Keasbey & Mattison Co., 160 U.S. 221, 16 S.Ct. 273, 40 L.Ed. 402 (1895), unless it consented to suit elsewhere by actually appointing an agent to receive service. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939); Moss v. Atlantic Coast Line R. Co., 149 F.2d 701 (2d Cir. 1945). "Doing business" was not defined. Some courts and commentators believe that § 1391(c) is met if jurisdictional tests are met. Houston Fearless Corp. v. Teter, 318 F.2d 822 (10th Cir. 1963), Jaftex Corporation v. Randolph Mills, Inc., 282 F.2d 508 (2d Cir. 1960); 1 Moore's Federal Practice, § 0.142 [.5-1-3] at 1411. Others inquire whether the foreign corporation would be required to get a license in the state by virtue of its activity there. Remington Rand, Inc. v. Knapp-Monarch Co., 139 F.Supp. 613 (E.D.Pa. 1956); Damon Coats, Inc. v. Munsingwear, Inc., 431 F.Supp. 1303 (E.D.Pa.1977). Both tests require reference to other statutes to define doing business. A third line rejects these tests but offers no alternative. Time, Inc., v. Manning, 366 F.2d 690 (5th Cir. 1966); Scott Paper Co. v. Scott's Liquid Gold, Inc., 374 F.Supp. 184 (D.Del.1974).