358 S.E.2d 420

**Della KIDWELL, et al.**

v.

**WESTINGHOUSE ELECTRIC CO.,
etc., Monongahela Power Co.,
etc., and Bobby Hall.**

**No. 16610.**

Supreme Court of Appeals of
West Virginia.

July 11, 1986.

Dissenting Opinion July 14, 1987.

P. Rodney Jackson, Franklin S. Fragale, Jr., James M. Barber, DiTrapano & Jackson, Charleston, for appellants.

Thomas E. Scarr, Charleston, W.T. Shaffer, Gary W. Hart, Charleston, Richard D. Frum, Spencer, for appellees.

MILLER, Chief Justice:

The principal issue in this appeal is whether venue was proper in the Circuit Court of Kanawha County over defendant Westinghouse Electric Company. The circuit court held that venue was improper and dismissed Westinghouse from the suit. We disagree with the standard the circuit court applied and reverse.

This is an action for personal injuries brought by Christopher Kidwell and his mother. The accident occurred on January 11, 1981, when Christopher Kidwell came into contact with a Westinghouse transformer that had been installed on a pole owned by Monongahela Power Company. The accident occurred in Roane County.[1]

---

**1.** Suit was originally instituted in the Circuit Court of Roane County against several defen-

dants including Monongahela Power Company, but not Westinghouse. This suit was dismissed

There is no substantial disagreement about the facts surrounding the venue issue and all parties agree that the controlling case is *Brent v. Board of Trustees,* 163 W.Va. 390, 256 S.E.2d 432 (1979). The circuit court found that Westinghouse maintained a telephone number and business address within Kanawha County and performed various business activities in Kanawha County which were unrelated to the transformer involved in this litigation. It concluded under *Brent* that because Westinghouse's business activities in Kanawha County were not related to the transformer which allegedly caused the plaintiffs' injuries, venue was improper in Kanawha County.[2]

In *Brent,* we dealt with the question of the proper venue for a suit against a corporation under W.Va.Code, 56-1-1, which states in part:

"Any action or other proceeding at law or suit in equity, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:

\* \* \* \* \* \*

"(b) If a corporation be a defendant, wherein its principal office is, or wherein its mayor, president or other chief officer resides; or if its principal office be not in this State, and its mayor, president or other chief officer do not reside therein, wherein it does business...."

Specifically, *Brent* considered the question of what is meant by the phrase "wherein it does business" in W.Va.Code, 56-1-1(b). We answered this question by referring to W.Va.Code, 31-1-15, which defines to some degree when a corporation is doing business in this State for the purpose of obtaining *in personam* jurisdiction over the corporation.[3] We acknowledged in *Brent* that this statute, which is often termed our "long-arm" statute, must be read in conjunction with the constitutional due process concept that a foreign corporation must have certain "minimum contacts" before it is amenable to personal jurisdiction in our courts. We cited *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), and came to this conclusion in *Brent,* 163 W.Va. at 393, 256 S.E.2d at 434:

"Certainly, if a corporation can be subjected to state jurisdiction if it does certain acts in the state, any county in which it does them is a place where that jurisdiction can work.... A state court could exercise jurisdiction anywhere the defendant was present, had minimum contacts or had any property including intangible obligations." (Citations omitted).

After *Brent,* the United States Supreme Court decided *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), which established that a state's attempt to obtain jurisdiction over a foreign corporation under a long-arm statute that authorizes jurisdiction because of a tortious injury committed by the foreign corporation within the state would not pass constitutional muster unless there were other minimum contacts within the state by the foreign corporation.

We discussed *World-Wide Volkswagen* at some length in *S.R. v. City of Fairmont,* 167 W.Va. 880, 280 S.E.2d 712

---

without prejudice and this second action was brought in Kanawha County.

2. The single Syllabus of *Brent* states:
"If a corporation has made a contract to be performed in whole or in part, by any party thereto, in a county; or, has manufactured, sold, offered for sale or supplied any product in a defective condition and such product has caused injury to any person or property within that county, it is doing business there and the county's courts have venue to try suits against it which arise from or grow out of such contract, tort or manufacture, sale, offer for sale or supply of such defective product."

3. The particular language of W.Va.Code, 31-1-15, is:
"Any foreign corporation which shall conduct affairs or do or transact business in this State without having been authorized so to do pursuant to the provisions of this article shall be conclusively presumed to have appointed the secretary of state as its attorney-in-fact with authority to accept service of notice and process on behalf of such corporation...."

(1981), and concluded a Pennsylvania corporation was amenable to jurisdiction in this State.[4] However, we stressed in *City of Fairmont* that the doing business concept in our long-arm statute, W.Va.Code, 31-1-15, had to be interpreted as requiring there be certain minimum contacts in this State by the foreign corporation and quoted from Syllabus Point 1 of *Hodge v. Sands Manufacturing Co.*, 151 W.Va. 133, 150 S.E.2d 793 (1966).[5]

There is a degree of emphasis in *Brent* that singles out that portion of our long-arm statute, W.Va.Code, 31-1-15, which includes in the concept of doing business, the making of a contract, the committing of a tort, in whole or in part, in this State, or the selling of a defective product in this State.[6] We do not believe that after *World-Wide Volkswagen* such an exclusive test can be relied upon to constitute doing business sufficient for *in personam* jurisdiction. As we emphasized in *City of Fairmont*, the test must look to the minimum contacts standard.

It must be recalled that *Brent* dealt with our corporation venue statute, W.Va.Code, 56-1-1(b), which among its standards for finding proper venue in a given county to sue a corporation utilized the phrase "wherein it does business." It was in order to give content to this phrase that we utilized the doing business standard set out in W.Va.Code, 31-1-15. Furthermore, there is a fundamental harmony brought about to construe "wherein it does busi-

ness" in the venue statute with the doing business concept in our long-arm statute. It would create an anomalous situation to permit the venue standard to be more liberal only to find that personal jurisdiction could not be met under our long-arm statute.

This rule is consistent with other jurisdictions that have a venue statute predicated on the business activity done in a county by a corporate defendant. *E.g., Ex Parte Reliance Insurance Co.*, 484 So.2d 414 (Ala. 1986); *Bergen v. Martindale-Hubbell, Inc.*, 245 Ga. 742, 267 S.E.2d 10 (1980); *In Re Asbestosis Cases*, 274 S.C. 421, 266 S.E.2d 773 (1980).

Consequently, we conclude whether a corporation is subject to venue in a given county in this State under the phrase in W.Va.Code, 56-1-1(b), "wherein it does business" depends upon the sufficiency of the corporation's minimum contacts in such county that demonstrate it is doing business, as that concept is used in W.Va.Code, 31-1-15. To the extent that *Brent* implies a more restrictive venue standard, it is overruled.

In the present case, the focus of the circuit court's concern was whether the business activity of Westinghouse in Kanawha County related directly to the transformer that caused the injury. This test was too narrow. The circuit court should have determined whether Westinghouse had sufficient minimum contacts in Kanawha County demonstrating it was doing

---

4. In note 5 of *City of Fairmont*, 167 W.Va. at 885, 280 S.E.2d at 715, we made this comment with regard to *Brent*: "In *Brent v. Board of Trustees, Etc.*, [163 W.Va. 390], 256 S.E.2d 432 (1979), we applied the jurisdictional due process 'doing business' test to our venue statute, W.Va. Code, 56-1-1(b), to determine whether a corporation was doing business in a particular county."

5. Syllabus Point 1 of *Hodge* states: "The standard of jurisdictional due process is that a foreign corporation must have such minimum contacts with the state of the forum that the maintenance of an action in the forum does not offend traditional notions of fair play and substantial justice."

6. The applicable portion of W.Va.Code, 31-1-15, is:

"[A] foreign corporation not authorized to conduct affairs or do or transact business in this State pursuant to the provisions of this article shall nevertheless be deemed to be conducting affairs or doing or transacting business herein (a) if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, (b) if such corporation commits a tort in whole or in part in this State, or (c) if such corporation manufactures, sells, offers for sale or supplies any product in a defective condition and such product causes injury to any person or property within this State notwithstanding the fact that such corporation had no agents, servants or employees or contacts within this State at the time of said injury."

business in such county as that concept is used in W.Va.Code, 31–1–15. Because of the lack of factual development on this issue, we are unable to decide if Westinghouse had sufficient minimum contacts in Kanawha County.

We, therefore, reverse the judgment of the Circuit Court of Kanawha County and remand the case for further proceedings consistent with this opinion.

Reversed and Remanded.

BROTHERTON, Justice, dissenting:

One of the purposes of the venue rules was to prevent forum shopping. *See, e.g., Rodriguez v. Grand Trunk Western R.R. Co.,* 120 Mich.App. 599, 328 N.W.2d 89 (1982). If we allowed plaintiffs to sue in any court in the State, courts giving larger verdicts would be overrun with plaintiffs. This unequal load would be unfair both to the courts and to corporate defendants. I believe the majority, by construing the venue statute to coincide with the constitutional limits for in personam jurisdiction, has given plaintiffs suing corporations carte blanche to forum shop.

The majority in this case has tied venue to the very broad jurisdictional test enunciated in *World-wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The *World-wide Volkswagen* test is "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567. This would be a workable rule for venue if it were read in light of a particular injury, *i.e.,* to require the defendant's contacts with the forum county to be such that he should reasonably anticipate being called into court in a particular county in connection with a particular product or injury. Without a connection to the injury, the venue rules are almost meaningless in the context of a tort suit against a large out-of-state corporation. An electric company, such as Westinghouse, may well conduct business activities in every county in the State. A plaintiff injured by a Westinghouse transformer could conceivably, under

the rule in this case, sue in any court in the State. In my opinion, this result gives plaintiffs too much freedom to shop for a favorable forum.

I would retain the rule announced in *Brent v. Board of Trustees,* 163 W.Va. 390, 256 S.E.2d 432 (1979), and I therefore note my dissent.

I am authorized to state that Justice NEELY joins me in this dissent.