GEORGE W. EHLERS AND OTHERS v. U. S. HEATING & COOLING MANUFACTURING CORPORATION AND OTHERS.
NATIONAL HEATING & COOLING MANUFACTURING CORPORATION, THIRD-PARTY DEFENDANT, APPELLANT.

124 N. W. (2d) 824.

November 22, 1963—Nos. 38,929, 38,930, 38,931.

---

[7]See, also, Conrad v. Peloquin, 177 Minn. 577, 226 N. W. 195.

*Porter, Stanley, Treffinger & Platt* and *Danforth & Allen,* for appellant.

*Streater & Murphy,* for plaintiff respondents.

*Brehmer & McMahon* and *John B. McCarthy,* for respondent Kraning.

*Robins, Davis & Lyons,* for respondent Kramer.

SHERAN, JUSTICE.

Appeals from an order of the district court denying motions for dismissal of third-party complaints.

A fire at Winona, Minnesota, on November 28, 1959, resulted in property damage to Zywicki Investment Company, Inc., owner, and to George W. Ehlers and Floyd Voss, lessee-occupants, all residents of that city. Each began a separate action in the state district court attributing the fire to a newly installed boiler. Several distinct parties were joined as defendants. Causes of action were pleaded against H. J. Kramer, d.b.a. Kramer Plumbing & Heating Company, on the theory that he had sold to plaintiff Zywicki and installed a "Fireball" boiler warranted to be fit for the purpose and of merchantable quality, with installation to be done in a workmanlike and safe manner. It was alleged that the boiler proved to be defective and the installation to be inadequate so that the boiler caused a fire destroying the building in

which it was placed and the contents therein located. Causes of action based on claimed negligent manufacture were asserted against four allied foreign corporations—National Heating & Cooling Manufacturing Corporation, U. S. Heating & Cooling Manufacturing Corporation, U. S. Plumbing & Fixture Corporation, and Home Essentials Corporation.

In the Voss and Zywicki actions the corporate defendants effected removal to the Federal District Court, and even though absence of complete diversity appeared on the face of the petition for removal, they resisted remand and obtained an order quashing service upon them.

Subsequently, in each of the three actions, a third-party complaint was served by defendant Kramer on his local supplier, Ross Kraning, d.b.a. Kraning's Sales & Service Company, also of Winona. Respondent Kraning, not being a party to the proceedings in Federal District Court and, therefore, not being affected by its ruling, in turn instituted third-party proceedings against defendant National Heating & Cooling Manufacturing Corporation, hereinafter called National Heating. Kraning's theory was that, being an intermediary in the marketing process, he was entitled to indemnification from the admitted manufacturer of the faulty boiler, either on the theory of breach of warranty or on general principles of negligence, for any loss he might sustain in the suit brought by Kramer. Service of the third-party complaints was made pursuant to Minn. St. 303.13, subd. 1(3). At this point, National Heating, organized under the law of Delaware and having its principal place of business in Ohio, filed in the Winona County District Court, in each of the three actions, its motion to quash the service of the third-party complaint and to dismiss the action. The factual basis for the motion was provided by an affidavit of one of its officers from which the following facts appear:

The boiler here involved was manufactured and assembled in a new condition by third-party defendant, National Heating, at its plant located at Zanesville, Ohio, and, on July 31, 1959, sold and delivered by it to Home Essentials Corporation, organized under the law of New York but also having its principal place of business in Ohio. The boiler

was sold and delivered by Home Essentials Corporation in a new condition to F. W. Sieffert & Son, of Chicago, Illinois, on August 3, 1959, which, on the same day, sold and delivered it to Kraning's Sales & Service Company of Winona. That company then sold and delivered it to H. J. Kramer, d.b.a. Kramer Plumbing & Heating Company, by whom it was installed in the building where the fire occurred. No employee, agent, officer, or representative of National Heating had anything to do with the boiler after it was sold to F. W. Sieffert & Son of Chicago, or participated in the sale and delivery of the boiler either to Kraning's Sales & Service Company or H. J. Kramer of Winona. No one connected with National Heating was involved in the installation of the boiler in the building involved. The corporation is not and never has been licensed or authorized to do or transact business within the State of Minnesota. It "does not do, nor has it ever done or transacted business" within the State of Minnesota. It owns no real or personal property within this state and has no plant, office, or place of business here. The corporation had no contract of any kind with any person, firm, corporation, or resident of Minnesota in connection with this boiler.

The motion for dismissal in each of the three third-party actions was denied and separate appeals are taken from these orders.[1]

Minn. St. 303.13, subd. 1, provides:

"A foreign corporation shall be subject to service of process as follows:

\* \* \* \* \*

---

[1] In the Ehlers case, but not in the Zywicki and Voss cases, U. S. Heating & Cooling Manufacturing Corporation, U. S. Plumbing & Fixture Corporation, and Home Essentials Corporation purport to appeal from the order of denial in the state district court. This order dated October 2, 1962, does not mention these three corporations. They did not join in the motions to quash service of process and it was not in fact served on them. Their appeal from this order in the Ehlers case is phrased as if from an order denying a motion to quash the service by Ehlers on all four of the corporate defendants. While the record indicates that such a motion was filed on February 17, 1961, no order with respect to the motion appears in the record. We

"(3) If a foreign corporation * * * commits a tort in whole or in part in Minnesota, against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such * * * tort. Such process shall be served in duplicate upon the secretary of state, * * * and the secretary of state shall mail one copy thereof to the corporation at its last known address, and the corporation shall have 20 days within which to answer from the date of such mailing, notwithstanding any other provision of the law. * * * [T]he committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the State of Minnesota."

The third-party process was served by Kraning in conformity with this provision and National Heating presumably received the mailed notice for which provision is made in the statute.

While answers have been interposed in each of the third-party actions, it is not claimed that National Heating has waived the jurisdictional question.

The issue for decision is whether the property damage here involved —if the result of negligent manufacture of the boiler—can, under the circumstances described, be considered a tort committed "in whole or in part in Minnesota" so as to give jurisdiction over the manufacturer, upon compliance with § 303.13, subd. 1(3), without offense to its Federal constitutional rights.

We have previously held that the negligent manufacture of a product in a foreign state becomes a tort committed "in whole or in part in Minnesota" when personal injury occurs in Minnesota as a result of use of the product here. Atkins v. Jones & Laughlin Steel Corp. 258

---

do not undertake to determine their status, except to find them not involved here as appellants.

Minn. 571, 104 N. W. (2d) 888; Adamek v. Michigan Door Co. 260 Minn. 54, 108 N. W. (2d) 607. See, also, Beck v. Spindler, 256 Minn. 543, 99 N. W. (2d) 670; The Dahlberg Co. v. Western Hearing Aid Center, 259 Minn. 330, 107 N. W. (2d) 381; Paulos v. Best Securities Inc. 260 Minn. 283, 109 N. W. (2d) 576. Cf. Fourth Northwestern Nat. Bank v. Hilson Industries, Inc. 264 Minn. 110, 117 N. W. (2d) 732.

The fact that property damage only is involved in this case does not change the situation in view of our decision in Wright v. Holland Furnace Co. Inc. 186 Minn. 265, 243 N. W. 387.

Notwithstanding these decisions, appellant would distinguish the instant problem upon the ground that the Adamek and Atkins cases involved more "minimal contacts" with the State of Minnesota within the meaning of Hanson v. Denckla, 357 U. S. 235, 251, 78 S. Ct. 1228, 1238, 2 L. ed. (2d) 1283, 1296, where the United States Supreme Court said:

"However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him."

There is no decision of the United States Supreme Court directly in point. In the absence of specific controlling authority with respect to Federal constitutional limitations on the power of the state to provide for service upon foreign corporations in the manner specified by § 303.13, subd. 1(3), it remains our opinion that service upon a foreign corporation in the manner prescribed is effectual to confer jurisdiction in cases such as this. We feel justified, in view of the record, in concluding that the product here involved was manufactured by appellant corporation for use by the general public. It is not contended that the area of foreseeable use of the product was so limited as to exclude the State of Minnesota. The affidavit filed in support of the motions to dismiss did not negate the reasonable inference that the "Fireball" boiler is a mass-production unit intended for nationwide use. The fact that such a product sold to a Chicago distributor would, in the regular course of distribution, be purchased and used by a Minnesota buyer

would seem reasonably to have been anticipated by the manufacturer. Appellant, National Heating, does not claim by affidavit or otherwise that the "Fireball" here involved acquired Minnesota situs in any way other than in the usual and customary marketing process vital to the conduct of a profitable enterprise. We conclude, therefore, that the situation is one controlled by our prior decisions.[2] Whether a different result would follow in this case were the manufacturer to have established that the use of his product in Minnesota was not foreseeable need not be and is not determined. The order of the district court refusing to quash the service of process and to dismiss the proceedings against National Heating & Cooling Manufacturing Corporation is affirmed.

Affirmed.

---

[2]Under similar circumstances, jurisdiction was sustained by the Illinois Supreme Court where service was made pursuant to a "single act" statute such as our own. See, Gray v. American Radiator & Standard Sanitary Corp. 22 Ill. (2d) 432, 176 N. E. (2d) 761.