MOUNTAIN STATES SPORTS, INC., a
Colorado corporation, Plaintiff,

v.

William SHARMAN et al., Defendants.

No. C 189-71.

United States District Court,
D. Utah, C. D.

Heard Sept. 15, 1972.

Decided Oct. 13, 1972.

614

Dennis McCarthy and E. Scott Savage (Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah), for plaintiff and specially for Bill Daniels.

W. Robert Wright (Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah), for defendants.

## MEMORANDUM AND ORDER

ALDON J. ANDERSON, District Judge.

This matter involves defendants' alleged tortious interference with a personal service contract under which William Sharman had coached the Utah Stars basketball team and, by counterclaim, plaintiff's alleged breach of this contract. Following the purported interference or breach, Mr. Sharman assumed coaching duties for the Los Angeles Lakers basketball team.

Defendants have requested the court to make *findings of fact and conclusions of law* with respect to the court's July 5, 1972, order refusing to quash service on defendants under Utah's long-arm statute. Plaintiff has resisted this request and has moved for an order compelling production of certain documents. Mr. Daniels has moved to quash service upon him of a counterclaim pleaded by defendants.

## IN PERSONAM JURISDICTION OF DEFENDANTS

Before this action was removed from state court, defendants were served under Utah's long-arm statute.[1] Plaintiff argues for the validity of this service on the ground that the statute authorizes out-of-state service upon parties who cause "any injury within this state whether tortious or by breach of warranty." Utah Code Ann. § 78–27–24 (3) (Supp.1971). In an order dated July 5, 1972, the court found jurisdiction over the defendants pursuant to this provision. *Cf.*, Fed.R.Civ.P. 4(e). In view of the controversy surrounding this order, the court makes the following brief comments.

■■ The Utah law is intended "to assert jurisdiction over nonresident defendants [in actions brought by Utah citizens] to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." Utah Code Ann. § 78–27–22 (Supp.1971). The permitted extent to which jurisdiction may be asserted is constitutionally limited to those circumstances which are "reasonable, in the context of our federal system of government . . . ." International Shoe Co. v. Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This limitation may be further reduced to two principal restrictions: "the twin tests of fairness-reasonableness to the defendant on the one side and territorial respect for sister states' due spheres on the other." American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 439 F.2d 428, 435 (2nd Cir. 1971), quoting, Rosenberg, Proposed Direct Action Statute, N. Y. Judicial Conference,

---

1. Utah Code Ann. § 78–27–22 (Supp. 1971) provides: *Jurisdiction over nonresidents —Purpose of act.*—It is declared, as a matter of legislative determination, that the public interest demands the state provide its citizens with an effective means of redress against nonresident persons, who through certain significant minimal contacts with this state, incur obligations to citizens entitled to the state's protection. This legislative action is deemed necessary because of technological progress which has substantially increased the flow of commerce between the several states resulting in increased interaction between persons of this state and persons of other states.

The provisions of this act, to ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution.

Utah Code Ann. § 78–27–24 (Supp. 1971) provides in pertinent part: *Jurisdiction over nonresidents—Acts submitting person to jurisdiction.*—Any person, notwithstanding section 16–10–102, whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

. . . . .

(3) The causing of any injury within this state whether tortious or by breach of warranty;

. . . . .

Sixteenth Annual Report 264, 265 (1971).

■■ Fairness and reasonableness to the present defendants may be measured by a number of factors including the foreseeability of the alleged injury in Utah, the extent to which defendants engage in interstate commerce and to to which they have sought the protection of the state, the nature and seriousness of the alleged injury and the general convenience of defending in Utah. *See, generally, e. g.,* Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); McGee v. International Life Ins., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Note, In Personam Jurisdiction Expanded: Utah's Long-Arm Statute, 1970 Utah L.Rev. 222 (1970); 72 Colum.L.Rev. 191 (1972). Assuming the existence of tortious injury in the instant case, the constitutional requirements of fairness and reasonableness to the defendants are clearly met. Actions which would deprive a Utah-based basketball team of the benefits of its coaching contract would clearly have foreseeable impact in Utah notwithstanding the fact that the team is owned by a Colorado corporation. *See,* Spectacular Promotions, Inc. v. Radio Station WING, 272 F.Supp. 734, 737 (E.D.N.Y.1967) quoted in American Eutectic, *supra* (discussing the situs of injury to interstate corporations). While it is true that the critical events associated with the dispute apparently took place in California, the record reveals no substantial claim by defendants that trial in the present forum would result in hardship, injustice or unusual inconvenience. Defendants are engaged in interstate business dealings which suggest their general ability to litigate matters outside of California. It is true that the defendants apparently had no contact with Utah while conducting the disputed activity (although the record shows some contacts with the state resulting from exhibition and scouting ventures and nationwide telecasts). Furthermore, the alleged injury is not of a personal or highly dangerous na-

ture so as to enhance Utah's interest in serving as the forum. Nevertheless, Utah's long-arm statute sufficiently evinces the state's interest in the present litigation and coupled with the factors already recited results in the conclusion that the requirements of fairness and reasonableness to the defendants are not offended by a finding of jurisdiction.

■ The test of "territorial respect for sister states' due spheres" requires the forum state to have sufficient contacts with the transaction or a party to make it, in relation to other states, a logical forum for adjudication. This requirement is in part met by the factors already discussed. Utah law further requires that a plaintiff availing himself of the long-arm statute must be a "citizen." In view of the broad interpretation to be put on the statute, this requirement may be equated with the constitutional requirement that, in typical long-arm situations, the forum state have sufficient contacts with the plaintiff. Therefore, the definition of "citizen" in the present context is satisfied when the party demonstrates sufficient contact with the forum state, in relation to the events in dispute, to ensure the proper "respect for sister states' due spheres." If the disputed events or the defendant is closely tied to the forum state, the plaintiff may need little or no contact with the forum in order to sue there. Of course, in such a circumstance, a plaintiff probably need not invoke the long-arm statute. Where the defendant and the disputed events are more loosely tied to the forum, as in the present case, the plaintiff must demonstrate greater contacts with the forum. Plaintiff Mountain States Sports is a Colorado corporation doing business in Utah. Its Utah business includes the contract affected by this dispute. That contract directly benefited the corporation's business in Utah, The Utah Stars basketball team. These facts represent the requisite Utah contacts in the present case. Indeed, it seems probable that the plaintiff's ties

to Utah—in relation to the present dispute—are greater than to any sister state. Thus the statutory "citizenship" requirement and constitutionally mandated respect for the jurisdictional spheres of sister states are satisfied.

The reasoning outlined above results in a finding of *in personam* jurisdiction only if plaintiffs have alleged sufficiently a claim arising from an act which causes tortious injury within the state. Without such injury, defendants' contacts with the state may be insufficient to vest the court with jurisdiction. It is this requirement of injury which is the focal point of the present jurisdictional dispute. Defendants vigorously request and plaintiff equally vigorously opposes formal findings of fact and conclusions of law as to the sufficiency of the injury allegation. Defendants' request appears bottomed in the beliefs that (1) the court cannot assume jurisdiction unless an injury within the state actually occurred and (2) in order to proceed with the case at all, the court must make a preliminary finding of injury. However, the court interprets the Utah law to require only a good faith allegation of injury in order to vest the court with power to proceed to trial. *See* 2 Moore's Federal Practice ¶ 4.41–1 [3] at 1291.57–58 and esp. n. 32 (1970); *Cf.*, Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957). Following a hearing in the instant case, the court determined the existence of such an allegation. To interpret the statutory provision to require more would end in a trial on the merits to determine the commission of a tort and the existence of resulting injury within the state. Such a procedure might result in an anomalous situation wherein a plaintiff who lost on the merits would merely find his action dismissed for lack of jurisdiction and then be able to proceed anew on the same claim in another state. Even if the court placed an interpretation upon the Utah law which required a jurisdictional finding of tortious injury, it would be inappropriate to make that finding at this time. Since the juris-

dictional question is intimately "tied to the actual merits of the case," its final determination is better postponed until trial in order "to prevent a summary decision on the merits without the ordinary incidents of a trial including the right to jury." Schramm v. Oakes, 352 F.2d 143, 149 (10th Cir. 1965). Under this alternate conclusion, the court's order of July 5, 1972, is one of a preliminary nature subject to modification following trial. In any event, the court determines findings and conclusions, other than those contained in this discussion, to be inappropriate at this time.

## DISCOVERY

Defendants have resisted plaintiff's request for the production of certain of defendants' financial records on the ground that until the court entered findings and conclusions in the jurisdictional matter already discussed, it could not be determined whether the documents sought were within the proper scope of discovery. Apparently as a result of the defendants' position, no answers to the production request—either affirmative or negative—were submitted as required by Fed.R.Civ.P. 34(b) and 37(d). The court cannot condone this failure, but under the peculiar circumstances of this case declines to impose sanctions.

Fed.R.Civ.P. 26(b)(1) defines the scope of discovery to include

". . . any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . . It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

The court's ruling in the jurisdictional question under the Utah long-arm statute does not circumscribe this definition. It appears that the documents sought may themselves bear upon the plaintiff's claims of tortious interference or injury or may lead to materials

which do. They are the proper subjects of discovery.

## THE ADDITION OF BILL DANIELS AS A PARTY

Defendants have filed a counterclaim naming plaintiff and plaintiff's board chairman, Bill Daniels. Defendants served Mr. Daniels without obtaining leave of court and plaintiff moved to quash this service and to dismiss the counterclaim as against Mr. Daniels because leave of court was not obtained.

 In 1966, Fed.R.Civ.P. 13(h) was amended in order to provide explicitly for the addition of parties to a counterclaim when the requirements for mandatory or permissive joinder, Fed.R.Civ.P. 19 and 20, were complied with. At the same time, the requirement that a court order be obtained to join additional parties was dropped without comment in the Advisory Committee's Notes. 3 Moore's ¶ 13.39 at 66–67 (Supp. 1971). However, the general practice apparently continues to contemplate an order. *E. g.*, Ulichny v. General Electric Co., 309 F.Supp. 437 (N.D.N.Y. 1970); Timely Products Corp. v. Arron, 303 F.Supp. 713 (D.Conn.1969); United States v. Techno Fund, Inc., 270 F. Supp. 83 (S.D.Ohio 1967). *See* Fed.R. Civ.P. 21. The court chooses to comport with this practice so as to insure orderly compliance of proposed parties with the requirements of Rule 19 or 20. As a result, the motions should be granted with the understanding that the defendants may seek the court's leave for the proper addition of Mr. Daniels.

## ORDER

Defendants' request for findings of facts and conclusions of law in connection with the court's order of July 5, 1972 is denied except insofar as herein complied with.

Plaintiff's motion to compel production dated August 22, 1972, is granted subject to this court's protective order of September 25, 1972. Production shall be accomplished at a time within 45 days of this order and at a place agreeable to the parties involved.

Plaintiff's motions to quash process on Bill Daniels and to dismiss the counterclaim against him are granted without prejudice to the defendants' reassertion of these matters consistent with this memorandum.