R. T. ECKLES, Trustee in Bankruptcy for Mountain States Sports, Incorporated, a Colorado Corporation, Plaintiff-Appellee,

v.

William SHARMAN and California Sports, Incorporated, a California Corporation, Defendants-Appellants.

Nos. 75–1434, 75–1435.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Oct. 15, 1976.

Decided Feb. 3, 1977.

Robert G. Pierce, Lakewood, Colo. (Butler, Lepore, Landrum and Pierce, Lake-

wood, Colo., were with him on the brief), for plaintiff-appellee R. T. Eckles, Trustee in Bankruptcy.

W. Robert Wright, Salt Lake City, Utah (James S. Lowrie, of Jones, Waldo, Holbrook & McDonough, Salt Lake City, Utah, was with him on the brief), for plaintiff-appellant William Sharman.

Stephen H. Anderson, Salt Lake City, Utah (Paul S. Felt and Ray, Quinney & Nebeker, Salt Lake City, Utah, were with him on the brief), for defendant-appellant California Sports, Inc.

Before BARRETT, BREITENSTEIN and DOYLE, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This is an action by the owner of a professional basketball team for breach of contract by a former coach and for the inducement of that breach by the owner of another professional basketball team. Judgment was entered on a jury verdict for $250,000 against the coach and for $175,000 against the inducing owner. We reverse and remand with directions.

After these appeals were filed, the plaintiff-appellee Mountain States Sports, Inc., became bankrupt and R. T. Eckles, trustee in bankruptcy, was substituted as the appellee in each case. References herein will be to Mountain States rather than to the trustee.

Defendant-appellant Sharman was the coach of the San Francisco Warriors, a professional basketball team of the National Basketball Association, NBA. In 1968 he was persuaded to leave the San Francisco team and to coach the Los Angeles Stars of the newly formed American Basketball Association, ABA. The contract between Sharman and the Los Angeles team was for seven years and called for a starting salary of $55,000 with yearly increases of 5%. Provisions of the contract pertinent to these cases are:

(1)—Sharman was given an "option to purchase 5% ownership of the Club" at a price to be agreed upon between him and the owner.

(2)—Sharman was to participate in a "pension plan" of an undefined nature.

(3)—The parties agreed that: "In the event any one paragraph of this Agreement is invalid, this Agreement will not fail by reason thereof but will be interpreted as if the invalid portion were omitted."

(4)—California law governs the agreement.

In 1970 the Los Angeles Stars were sold for $345,000 to plaintiff Mountain States Sports, Inc., a Colorado corporation, of which Bill Daniels was the president and principal stockholder. An addendum to the sale agreement provided:

"Buyer shall not be obligated to assume the Sharman contract unless he shall have confirmed his willingness to transfer to the city selected by Buyer for operation of the team. Seller states that Sharman has orally expressed his willingness to do so."

The team was moved to Salt Lake City, Utah, and became the Utah Stars. Without anything in writing pertaining to his participation in the move, Sharman went to Salt Lake City with the team. Sharman coached the Utah Stars during the 1970–1971 season and the team won the ABA championship.

During the two years that the team was in Los Angeles with Sharman as coach nothing was done with regard to the option and pension provisions of the contract. Boryla, the general manager of the Utah Stars, told Sharman that the pension provision would be worked out. Later Sharman and Daniels, the president of Mountain States, had numerous communications, both oral and written, concerning Sharman's pension rights. No final agreement was reached. In June, 1971, Sharman resigned as coach of the Utah Stars and, in July, signed a contract to coach the Los Angeles Lakers of the NBA.

Mountain States brought suit in Utah state court charging Sharman with breach of contract. The complaint was amended to assert a claim against defendant-appel-

lant California Sports, Inc., the owner of the Los Angeles Lakers, and two individuals for the tortious inducement of Sharman's breach of contract. Service was obtained on California Sports under the Utah long-arm statute, Utah Code Ann. § 78–27–22 (Supp.1971). The case was removed to the United States District Court for the District of Utah and fell before Judge Anderson.

California Sports contends that the court erred in assuming in personam jurisdiction over it on the basis of service under the long-arm statute. The statute confers jurisdiction over a non-resident who causes "any injury within this state whether tortious or by breach of warranty." In upholding its jurisdiction the district court said, *Mountain States Sports, Inc. v. Sharman,* D.Utah, 353 F.Supp. 613, 615, that " 'the twin tests of fairness-reasonableness to the defendant on the one side and territorial respect for sister states' due spheres on the other' " had been satisfied. California Sports says that the court ignored the "minimum contact" requirement stated in *International Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95. The court acknowledged that the contacts of California Sports in Utah were unrelated to the alleged inducement and then referred to Utah contacts "resulting from exhibition and scouting ventures and nationwide telecasts." Ibid. at 616. The court noted that the complaint charged injury to the Utah business of Mountain States. Ibid. at 617.

■ The cases relied on by California Sports are not pertinent. *Pellegrini v. Sachs and Sons,* Utah, 522 P.2d 704, rejected a claim against a California automobile dealer whose connection with Utah was that he sold a car which was involved in a Utah accident. *Hydroswift Corporation v. Louie's Boats & Motors, Inc.,* 27 Utah 2d 233, 494 P.2d 532, was a suit by a Utah plaintiff against a foreign corporation for the alleged conversion of a boat in Oregon. *Rhoades v. Wright,* 10 Cir., No. 72–1659, unpublished opinion filed July 23, 1973, was a suit in Utah against a Colorado defendant for actions in Colorado causing a wrongful

death. In none of the three cases did the defendant have any direct contact with the forum state. In the case at bar there were sufficient direct contacts to sustain in personam jurisdiction obtained by service under the long-arm statute.

Judge Anderson conducted extensive pretrial proceedings and entered a comprehensive pre-trial order. Among other things, Judge Anderson ruled "that the question of what was intended by the parties with respect to the severability clause and by the paragraph 11 [pension plan] clause in particular, is a question of fact that the jury should decide." After five days of a jury trial Judge Anderson declared a mistrial because of "communications between witness and a member of the court staff." The case was then assigned to Judge Ritter.

A jury trial before Judge Ritter began about a month later. Early in that trial Judge Ritter stated: "I'm not going to pay any attention to anything that happened over on the other side of this court." At the conclusion of the plaintiff's case, Judge Ritter denied a defense motion to dismiss saying that the claim of contract invalidity because of the option and pension clauses presented nothing but a "red herring" and that Sharman and the owners of the Utah Stars had made a "good faith" effort to "clear up those terms." At the conclusion of all of the evidence, Judge Ritter directed a verdict against Sharman on the question of liability.

The case went to the jury on the questions of damages recoverable from Sharman, liability of the other defendants charged with inducement of contract breach and, if there was inducement, the damages resulting therefrom. The jury returned verdicts (1) in favor of the individuals sued for inducement, (2) against Sharman in the amount of $250,000, and (3) against California Sports in the amount of $175,000.

Implicit in the direction of a verdict against Sharman on the question of liability is a ruling that as a matter of law (1) the contract between Sharman and the Los Angeles Stars was valid and enforceable, (2)

the contract was validly assigned to Mountain States Sports, and (3) the option and pension provisions of the contract were severable from the remainder thereof.

■ The option clause was unenforceable because it was nothing more than an agreement to agree. The pension clause did not state (1) the amount of pension, (2) the manner in which it would be funded, and (3) the age at which the pension would begin. The plaintiff does not seriously contest the defense claim that the pension clause is ambiguous.

Plaintiff relies on the severance clause which says that "[i]n the event any one paragraph of this Agreement is invalid," the agreement will not fail but will be interpreted as if the invalid portion was omitted. We have a failure of two paragraphs. Sharman and representatives of the plaintiff negotiated for about 15 months over the two mentioned clauses, principally that pertaining to the pension.

■ Good faith negotiations over various terms of an agreement do not make a fatally ambiguous contract valid and enforceable. The controlling California law is that for there to be an enforceable contract the parties must agree on the essential and material terms. See e. g. *Coleman Engineering Co. v. North America Aviation,* 65 Cal.2d 396, 55 Cal.Rptr. 1, 420 P.2d 713, and *Ablett v. Clauson,* 43 Cal.2d 280, 272 P.2d 753. If a contract has been agreed upon and all that remains is good faith negotiations or elaboration of non-essential terms, the contract will be held legally cognizable despite the uncertainties. See *White Point Co. v. Herrington,* 268 Cal.App.2d 458, 73 Cal.Rptr. 885, 889. The question is not whether good faith negotiations had taken place but whether the option and pension were so essential to the contract that failure to agree on the pertinent terms made the contract unenforceable.

*Moffat Tunnel Improvement Dist. v. Denver & S. L. Ry. Co.,* 10 Cir., 45 F.2d 715, 731, says that a severability clause "is but an aid to construction, and will not justify a court in declaring a clause as divisible when, considering the entire contract, it obviously is not." The crucial question is whether the clauses to be severed are essential to the contract. Essentiality depends on the intent of the parties. See *Keene v. Harling,* 61 Cal.2d 318, 38 Cal.Rptr. 513, 515, 392 P.2d 273, 275, and *Franklin v. American Nat. Ins. Co.,* 10 Cir., 135 F.2d 531, 533.

The intent evidence is not all one way. Sharman testified that without the option and pension provisions he would not have left the well-established NBA for the newly-established ABA. His testimony was corroborated by other witnesses. On the other hand, the record reveals that Sharman never made any serious efforts to clarify or enforce the option clause. Nothing was done about the pension clause during the two years that Sharman and the team were in Los Angeles. During the fifteen months that Sharman was with the Utah Stars many communications, both written and verbal, passed between Sharman and representatives of the team owners. Nothing was accomplished. From the evidence in the record a reasonable man could have drawn an inference one way or the other on the question of intent.

■ We have repeatedly held that a verdict may not be directed unless the evidence all points one way and is susceptible of no reasonable inferences which sustain the position of the party against whom the motion is made. See e. g. *Bertot v. School District No. 1, Albany County,* Wyo., 10 Cir., 522 F.2d 1171, 1178, and *Christopherson v. Humphrey,* 10 Cir., 366 F.2d 323, 325–326. On the record presented it may not be said, as a matter of law, that the option and pension clauses were unessential and hence severable. Neither can it be said, as a matter of law, that without the resolution of the controversy over those clauses Sharman agreed to the assignment of the contract to the owners of the Utah Stars. The pertinent intent questions required factual determination by the jury under proper instructions. The court erred in directing a verdict against Sharman and

in favor of Mountain States on the liability issue.

 The liability of California Sports depends on whether the contract between Sharman and the owner of the Los Angeles Stars was valid and whether the contract was enforceable by the owner of the Utah Stars against Sharman. If the contract was not valid, and if the contract was not enforceable by the Utah Stars, California Sports is not liable under the claim of tortious inducement of breach. The error of the court in directing a verdict on the question of Sharman's liability requires the reversal of the judgment against California Sports.

In the circumstances, it is not necessary for us to discuss the defendants' claims of many errors based on admission and rejection of evidence and on restriction of cross-examination. It is enough to say that the trial was not conducted in an impartial manner. In a new trial, judicial conduct similar to that appearing in the record before us, hopefully, will not be repeated.

The potential of a new trial impels us to discuss one matter in which the parties are in disagreement. The problem is the measure. of damages and the instructions relating thereto. The defendants say that they are not liable for lost profits and that the measure of damages is either the increased replacement expense or, if the employee is unique or irreplaceable, the increased remuneration which the employee would receive in the open market. Defendants point out that Sharman's replacements were obtained at lower salaries than that paid Sharman and that the Los Angeles Lakers paid Sharman basically what he received from the Utah Stars.

 Damages for breach of contract should be sufficient "to place the plaintiff in the position he would be in if the contract had been fulfilled." C. McCormick, Handbook of the Law of Damages, § 137 at 560. Lost profits may be recovered in an employee breach of contract case if the employer can show that the parties had reason to believe that losses would result from the breach. 11 S. Williston, A Treatise on the Law of Contracts (3rd Ed.1968) § 1362A, n. 5, at 337–338. 5 A. Corbin, Corbin on Contracts, § 1096 at 521. We are aware of only one California case which addresses the issue. *Steelduct Co. v. Henger-Seltzer Co.,* 26 Cal.2d 634, 160 P.2d 804, 812, says:

"[T]he elements of the plaintiff's [employer's] damages are two: the reasonably necessary expense to which plaintiff was put in procuring a new agent, and the loss of profits (if any profits were lost) caused by defendants' breach."

 Consequential damages such as lost profits may be recovered in an appropriate case for breach of an employment contract. In the case here, they can be justified only on a finding that Sharman, as a coach, was unique or irreplaceable. The evidence in this regard was conflicting. The jury should have been told that the plaintiff could not recover damages for lost profits or diminished franchise value without a finding that Sharman was irreplaceable as a coach.

 Additionally, the recovery of consequential damages may be had in a suit for breach of an employment contract only if those damages were reasonably foreseeable when the contract was made. The court instructed the jury that it could presume that all damages which were the natural result of the breach were reasonably foreseeable. Natural result and foreseeability do not equate in a breach of employment case. Consequential damages for breach of an employment contract may only be those that the employee had reason to believe at the time of contract making would occur if he breached the contract. See e. g. *Roth v. Speck,* 126 A.2d 153, 155 (Mun.Ct.App.D.C.), and *Winkenwerder v. Knox,* 51 Wash.2d 582, 320 P.2d 304, 308–309. The failure of the court to instruct the jury that to award consequential damages the jury must find that the claimed losses were reasonably foreseeable at the time when the contract was made may explain how the jury awarded $250,000 in damages against Sharman. The entire franchise of the Los Angeles

Stars had been sold to the plaintiff a little more than a year before the breach for $345,000. The sale contract included the players and attributed no value to the services of Sharman.

The jury verdicts awarded a recovery of $250,000 from Sharman and $175,000 from California Sports. The judgment of the court reads that the plaintiff "recover against defendants, William Sharman and California Sports, Inc., jointly and severally, the sum of $250,000" and against California Sports individually $175,000. The judgment is inconsistent with the verdicts and cannot stand. It may be that damages for inducement may not be less than damages for breach. We know of no law which permits the pyramiding of losses for inducement on top of damages for breach. The pyramiding action of the court is indicative of the atmosphere in which the trial was conducted.

In Nos. 75–1434 and 75–1435, the judgments are severally reversed and the case is remanded for a new trial in accordance with this opinion.

Upon consideration of the entire record we conclude that the interests of justice require that the retrial of this case should be by a judge from without the District of Utah. Judge Anderson recused because of the incident which resulted in the mistrial. The conduct of the trial by Judge Ritter indicates that he has a strong personal bias and prejudice incompatible "with the impartiality that litigants have a right to expect in a United States district court." See *United States v. Ritter*, 10 Cir., 540 F.2d 459, 464.

The panel is authorized to say that the other members of the court, except for Judge Hill who did not participate, agree that the retrial of this case should be by a judge from without the District of Utah.