BURT DRILLING, INC., a Utah Corporation and Intermountain Power Project, a Utah Corporation, Plaintiffs and Appellants,

v.

PORTADRILL, a Division of Smith International, Inc., and Pacific Hydro Corporation, Defendants and Respondents.

No. 15709.

Supreme Court of Utah.

March 4, 1980.

Don R. Peterson of Howard, Lewis & Peterson, Provo, for plaintiffs and appellants.

H. James Clegg of Snow, Christensen & Martineau, F. Robert Bayle, Salt Lake City, for defendants and respondents.

WILKINS, Justice:

Plaintiffs appeal from an order of the Fourth District Court, Utah County, granting a motion by Defendant Pacific Hydro Corporation (herein "defendant" unless otherwise indicated) to quash service and dismiss the complaint as against it. The Dis-

trict Court found that defendant, a California corporation with its principal place of business in San Francisco, California, did not have sufficient contacts with the State of Utah on which to base personal jurisdiction under Section 78-27-24.[1] Defendant Portadrill did not contest jurisdiction and is not a party to this appeal.

Reversed and remanded for trial on the merits. Costs to plaintiffs.

The facts as alleged in the complaint and in the documents and affidavits of the parties on file are not in dispute, and may be summarized as follows:

Plaintiff Burt Drilling, Inc., a corporation of Utah, (herein "Burt") initiated contact with defendant by requesting a quotation of the purchase price of drilling equipment for use in its drilling business in the states of New Mexico, Utah and others. Defendant responded by sending a proposal to Burt at Burt's Springville, Utah, address, stating the prices of a Portadrill drilling machine mounted on an International Harvester truck chassis, and related equipment. The proposal contains this paragraph:

> Above prices are f.o.b. Denver, Colorado, except where noted otherwise, and do not include sales tax, license or other fees. Drive out charge on the drilling machine to Springville, Utah is $1,000.

Burt then ordered the equipment by telephone, and defendant sent an invoice specifying the equipment and prices, which contained the words, "will call—Denver . . drill pipe by common carrier to Utah." The invoice was signed by both parties. Burt and defendant also entered into an agreement by which defendant retained a security interest in the equipment until payment of the full purchase price, which stipulated the situs of the equipment to be Mapleton, Utah. Burt accepted delivery of the equipment in Denver and drove it to a drilling site in New Mexico where it failed to perform properly. The complaint alleges that the machine failed three times between

---

1. All statutory references are to Utah Code Ann., 1953, as amended, unless otherwise specifically indicated.

March 18, 1975 and June 10, 1975, and that upon each failure, Defendant Portadrill, the manufacturer, undertook to adjust and repair the rig. However, after the third breakdown, Burt lost its contract to drill at the New Mexico° job site, and drove the drilling rig to Utah. In Utah, Burt entered into a contract with Plaintiff Intermountain Power Project, a Utah corporation (herein "Intermountain"), to drill test water wells in Wayne County, Utah. On August 14, 1975 the drilling rig again failed to perform, but this time the drill pipe and attachments fell into the well casing and could not be removed, so that Intermountain had to abandon the well for which it claims damages. At this time, defendant sent representatives to Utah to examine the rig and work with Burt to correct the defects and malfunctions of the rig. The complaint alleges breach of warranties of fitness for a particular purpose, and warranties of merchantability against defendant.

Section 78–27–24 provides:

Any person, notwithstanding section 16–10–102, whether or not a citizen or resident of this state, who in person or through an agent does any of the following enumerated acts, submits himself, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any claim arising from:

(1) The transaction of any business within this state;

(2) Contracting to supply services or goods in this state;

(3) The causing of any injury within this state whether tortious or by breach of warranty; . . .

Plaintiffs argue that defendant either is subject to the jurisdiction of the Utah courts because it is "doing business" in this State or, as a result of defendant's "minimum contacts" with this State has submitted itself to our jurisdiction within the meaning of subparagraphs (1), (2) and (3), of our "long-arm" statute, cited above.

The evidence in this record does not reveal that defendant was doing business in this State, which would require substantial and continuous activity here. Indeed, there is no evidence that defendant sold products for use in this State to any resident other than Plaintiff Burt. Hence, we must pursue an analysis concerning minimum contacts.

As this Court announced in its recent case of *Abbott G. M. Diesel, Inc. v. Piper Aircraft*, Utah, 578 P.2d 850 (1978), there are significant differences between the "doing business" concept and the "minimum contacts" test of *International Shoe*.[2] One basic difference is the extent to which the court may exercise jurisdiction over a defendant within the limitation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

■ If a defendant is found to have been doing business in this State (which as noted above would require substantial and continuous activity), though it had not procured a certificate of authority to transact business from the Secretary of State pursuant to the provisions of Section 16–10–102, defendant is nevertheless deemed to be present in this State. And that defendant may be subject to the jurisdiction of Utah's courts on claims which are related or entirely unrelated to that business in exactly the same manner as any other person who is physically present in this State who is served with process.

Section 78–27–24, however, pertains to jurisdiction over persons concerning claims against them arising from certain "minimum contacts" between those persons and this State. Our statute, § 78–27–24, ante, lists these requisite contacts, any one of which will suffice to satisfy the statute.

■ Due process requires that defendant's contacts with this State be *purposeful* on the part of defendant so that it can be said that the defendant reasonably knew that he submitted himself to this jurisdiction to answer for any harm caused by him at the time he voluntarily undertook the

---

**2.** *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

action constituting his contact with this State. It is clear that this is the requirement of *Hanson v. Denckla*,[3] in which the United States Supreme Court said:

. . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

■ Here, the allegations of plaintiffs' complaint show that their claims arise out of defendant's contacts with this State, which were: (1) defendant purposefully contracted with a resident of this State, knowing that it was a resident, and (2) defendant purposefully undertook to supply goods to that resident reasonably knowing or anticipating that those goods would be used in this State. It is clear from the language in the documents, quoted above, that defendant knew the equipment would be used in Utah. Further, the allegations of the complaint are that part of the injury caused by the defective goods was sustained here. Defendant therefore has had sufficient contacts with this State to meet the provisions of § 78–27–24(1), (2), and (3), ante.

■ After determining that § 78–27–24, ante, has been satisfied, the remaining question is whether it is consistent with "our traditional notions of fair play and substantial justice"[4] to require defendant to defend this action in our courts. And we hold that assertion of jurisdiction is in harmony with the requirements of due process owed to the defendant under the Fourteenth Amendment. As noted earlier, defendant's actions were purposeful, and with a view to derive substantial economic benefit from the plaintiff. It reasonably knew that if the equipment were defective, any injury caused by such defects could well be sustained here. The very fact that defendant agreed by the security agreement entered into between Burt and defendant that the situs of this expensive equipment[5] should be the State of Utah, reveals that defendant sought the protection of the laws of Utah in transacting this business.[6] By these acts, defendant has submitted itself to this jurisdiction to answer for any claims arising out of those acts.

MAUGHAN, J., concurs.

STEWART, Justice (concurring in result):

I agree that defendant Pacific Hydro is properly within the jurisdiction of the Utah courts pursuant to this State's Long-Arm Statute, § 78–27–22 *et seq.*, U.C.A. (1953), as amended. However, I think the decision should be placed on that part of the Long-Arm Statute, § 78–27–24(3), which establishes jurisdiction for claims arising from "[t]he causing of any injury within this state whether tortious or by breach of warranty."

The ultimate failure of the drilling rig purchased from defendant Pacific Hydro and the loss of equipment resulting from that failure occurred in Utah. Under the plain terms of § 78–27–24(3) defendant allegedly sustained an "injury within this state." The sole question of substance is whether the exercise of jurisdiction is constitutionally permissible.

In the instant case the defendant sold costly and complicated equipment to a Utah corporate buyer for delivery outside the State of Utah. The equipment malfunctioned, causing damage both out of state and within Utah. In *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E.2d 761, 766 (1961), the Illinois Supreme Court, in sustaining long-

3. *Hanson v. Denckla*, 357 U.S. 235 at 253, 78 S.Ct. 1228 at 1240, 2 L.Ed.2d 1283 (1958).

4. *International Shoe*, supra.

5. The total sales price of the equipment was $151,612.50.

6. By designating Utah as the situs of the equipment in the security agreement, defendant obviously intended to use the protection of the laws of Utah for its own benefit in the event that Burt defaulted in paying the purchase price and it became necessary for defendant to repossess the equipment.

arm jurisdiction in somewhat similar circumstances, stated:

As a general proposition, if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products. Advanced means of distribution and other commercial activity have made possible these modern methods of doing business, and have largely effaced the economic significance of State lines.

In the same vein, the Arizona Supreme Court, in *Phillips v. Anchor Hocking Glass Corp.*, 100 Ariz. 251, 413 P.2d 732 (1966), predicated personal jurisdiction on the presence of a single allegedly defective product which resulted in injury within the state. The court rejected an overly literal and narrow construction of *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958),[1] for the reason that to do otherwise would revitalize the "implied consent" theory that had been outdated by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Arizona court reasoned:

[I]t is apparent that all personal jurisdiction questions cannot be determined by asking whether the defendant purposefully conducted activities within the forum state to obtain the benefits and protections of its laws. Tortious and negligent acts are obvious examples in which it is unrealistic to say that the actors first considered the laws of the state in which such acts were committed. A rule limiting jurisdiction to defendants who "purposefully" conduct activities within the state cannot properly be applied in product liability cases in view of the fortuitous route by which products enter any particular state. Cummins, In Personam Jurisdiction Over Nonresident Manufacturers in Product Liability Actions, 63 Mich.L.Rev. 1028. [413 P.2d at 735.]

Numerous state courts have extended personal jurisdiction to out-of-state manufacturers or sellers of products that cause injury in the forum state. In *Gray v. American Radiator & Standard Sanitary Corp., supra*, the court held jurisdiction attached where the defendant's defective product caused injury within the forum, because there had been some contemplation of use of the defective product within the state, even though the product came into the state through someone other than the defendant. Similarly, in *Ehlers v. U. S. Heating & Cooling Mfg. Corp.*, 267 Minn. 56, 124 N.W.2d 824 (1963), the court extended jurisdiction where the defendant's only contact with the forum state was a defective boiler which had caused the plaintiff property damage. The court relied on the foreseeability of the boiler's entry into the state, since it was an item mass-produced for nationwide use.

In *Quigley v. Spano Crane Sales & Service, Inc.*, 70 Wash.2d 198, 422 P.2d 512 (1967), a foreign manufacturer-seller was sued by the purchaser of a crane for damages suffered as a result of the crane's failure. The court sustained jurisdiction and stated that where it is contemplated that a manufactured article will be resold and used in other states, but sale in no particular state is contemplated, the state where the injury takes place will, under the long-arm statute, have jurisdiction over an action arising from injuries caused by a defect in the manufactured article when used as intended by the manufacturer.

A malfunctioning paper press was characterized as a dangerous instrumentality by the Maine court in *Foye v. Consolidated Baling Machine Co.*, Me., 229 A.2d 196 (1967). The court said that a vendor who placed such a product in the hands of a citizen of Maine where it can and does

---

1. *Hanson* involved Florida's attempt to assert personal jurisdiction over a Delaware trustee whose limited contact with Florida was entirely fortuitous, the settlor of the trust having moved to Florida years after creating the trust. The Supreme Court rejected the extension of long-arm jurisdiction in such circumstances. *Han-*

*son* held that "there [must] be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." [357 U.S. at 253, 78 S.Ct. at 1240.]

cause injury has committed a tortious act subjecting the vendor to the jurisdiction of the courts of that state.

The absence of multiple acts within the state is not fatal to the exercise of state power over a foreign corporation, *B. K. Sweeney Co. v. Colorado Interstate Gas Co.*, Okl., 429 P.2d 759 (1967). In *Sweeney* the court referred to "the widely spread myth" that a single transaction by an out-of-state defendant may not be the basis for amenability to suit in the state where such transaction occurred and stated it had been effectively "shattered" by approbation of nonresident motorist cases. The court also held that there is no constitutional barrier to holding that a foreign corporation which does a single act or consummates a single transaction in the forum state would be amenable to suit for damages arising out of the transaction, irrespective of whether there are additional contacts with the state.

Numerous other cases have also held that the causing of injury in the state from a product intentionally placed in commerce for distribution to other states is a sufficient "contact" to satisfy due process, e. g., *Andersen v. National Presto Industries, Inc.*, 257 Iowa 911, 135 N.W.2d 639 (1965); *Atkins v. Jones & Laughlin Steel Corp.*, 258 Minn. 571, 104 N.W.2d 888 (1960); and *Metal-Matic, Inc. v. Eighth Judicial Dist. Court*, 82 Nev. 263, 415 P.2d 617 (1966). But see, e. g., *contra, Oliver v. American Motors Corp.*, 70 Wash.2d 875, 425 P.2d 647 (1967); *Hodge v. Sands Mfg. Co.*, 151 W.Va. 133, 150 S.E.2d 793 (1966); *Moss v. City of Winston-Salem*, 254 N.C. 480, 119 S.E.2d 445 (1961); and *DiMeo v. Minster Machine Co.*, 225 F.Supp. 569 (D.Conn.1963).

Interpretation of a state's long-arm statute requires consideration of both the scope of specific statutory language on which jurisdiction is based and constitutional due process requirements. Because the legislature has directed application of the long-arm statute "to the fullest extent permitted by the due process clause," the statutory and the constitutional inquiries in this case are identical.

This Court, by its decision in this case, states its concurrence with those states which, in keeping with the trend toward liberal application of long-arm legislation, find that personal jurisdiction over a nonresident manufacturer or seller may be based on the presence within the state of a defective product which causes injury in the state, as long as the constitutionally mandated "minimum contacts" test is complied with. *World-Wide Volkswagen Corp. v. Woodson*, —— U.S. ——, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Accordingly, defendant Pacific Hydro, pursuant to § 78–27–24(3), is subject to personal jurisdiction in this State, along with the codefendant Portadrill, to answer plaintiff's allegations concerning damages resulting from the malfunctioning of the drilling rig sold directly to plaintiff Burt, a Utah resident, by Pacific Hydro.

This Court has dealt with long-arm jurisdiction in a number of prior cases. By and large these cases have dealt with actions arising pursuant to § 78–27–24(1) and (2). These subsections apply to causes of action based on the transaction of business within this state or contracting to supply services or goods in Utah. Generally, in these cases, this Court has found the necessary significant minimal contacts on the basis of more than a single act performed within the state. However, subsection (3) covers instances in which jurisdiction may be predicated upon a single act—the causing of injury in the state.

The state's long-arm statute was accorded the full constitutional effect allowed by *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), in *Abbott G. M. Diesel, Inc. v. Piper Aircraft*, Utah, 578 P.2d 850 (1978). The Court stated, echoing the language of the statute, "that this state's jurisdictional standards should not be more restrictive than those allowed by federal due process limitations." *Id.* at 853. Although subsections (1), (2) and (3) of the long-arm statute were claimed as a basis for jurisdiction, the Court in *Abbott* focused on subsection (1), the "transaction of any business" provision. *Abbott* was remanded for a determination as to whether the requisite minimal contacts existed on which to base jurisdiction.

This Court in several cases has found an insufficient basis for establishing jurisdiction over an out-of-state defendant under subsection (3). These cases are distinguishable. Financial injury to a Utah plaintiff from an alleged out-of-state conversion was alleged as the basis for jurisdiction in *Hydroswift Corp. v. Louie's Boats & Motors, Inc.*, 27 Utah 2d 233, 494 P.2d 532 (1972). The tortious act complained of occurred in Oregon, and the Court properly concluded that jurisdiction could not be predicated upon the fact that the financial injury occurred in Utah because that was where the plaintiff was located. Acceptance of such a theory would lead to the unacceptable proposition that jurisdiction could be established anywhere a plaintiff might locate. As the United States Supreme Court indicated in *International Shoe v. Washington, supra,* and more recently in *World-Wide Volkswagen Corp. v. Woodson, supra,* state boundary lines are not entirely irrelevant to issues of state *in personam* jurisdiction.

In *Pelligrini v. Sachs and Sons*, Utah, 522 P.2d 704 (1974), a Utah plaintiff had purchased an automobile from a California dealer while she was a California resident. She subsequently moved to Utah and brought suit here against the dealer for injuries occurring in Utah that allegedly resulted from mechanical defects in the car. This Court affirmed the lower court's dismissal for want of jurisdiction. The Court's decision was predicated on two grounds. First, it was unfair to subject a dealer to long-arm jurisdiction because it had no control over where its products might be transported. Second, the defendant or an agent must be "engaged in some substantial activity which constitutes a purposeful minimum contact with this state." Unlike a manufacturer or a dealer marketing on a multistate basis, there was no indication that the defendant sold similar products in Utah or any state other than California. The Court stated that "proper safeguards of the rights of both parties require that jurisdiction should not be predicated solely on the ground that an article sold elsewhere by a dealer may be brought into the state and cause harm." *Id.* at 707. In the context of the facts of that case, the ruling, in my view, could hardly have been otherwise.

In *Kocha v. Gibson Products Co.*, Utah, 535 P.2d 680 (1975), the Texas defendant, a third-party defendant, did not sell its products to any business in Utah. The opinion does not indicate how the product which was allegedly defective was brought into the State. This Court affirmed the dismissal based on lack of jurisdiction and simply observed that the Texas third-party defendant had no "minimal contacts" with this State and was not engaged in the transaction of any business in Utah.

Necessarily, the due process limitations on state jurisdiction are flexible. The expansion of state *in personam* jurisdiction reflects the vast changes which have taken place in the nation's economy, particularly with respect to nationwide and multistate distribution of goods. Still, small merchants whose consumer products are intended primarily for consumption or use in a limited market area ought not to be subject to a foreign jurisdiction outside the market area when the vendor had no reasonable expectation that his products might be transported. The vendor in such a situation stands on stronger grounds in objecting to litigating a dispute in a foreign forum because of the lack of expectation and the impracticability of having to defend a suit anywhere one might be filed. A manufacturer of goods distributed nationally, either directly or through independent distributors, is in a different position with regard to the fairness of having to defend in different states, as is a wholesaler or jobber selling to distributors located in different states. Large nationwide or multistate businesses, which make great efforts to sell their products to as broad a population as possible, purposefully make use of the free channels of commerce and should be held accountable for legal actions arising out of their use of the nation's channels of commerce.

In *World-Wide Volkswagen Corporation v. Woodson, supra,* the United States Supreme Court held that a product liability action could not be instituted in Oklahoma against a New York retailer and a wholesal-

er of an allegedly defective automobile. The Court held that numerous factors must be weighed in determining the fairness of showing a non-resident defendant in a product liability case. The Court stated:

> The relationship between the defendant and the forum must be such that it is "reasonable . . . to require the corporation to defend the particular suit which is brought there." 326 U.S., at 317, [66 S.Ct. 154, at 158]. Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute, see *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, [78 S.Ct. 199, 201, 2 L.Ed.2d 223] (1957); the plaintiff's interest in obtaining convenient and effective relief, see *Kulko v. Superior Court, supra*, [436 U.S. 84] at 92, [98 S.Ct. 1690, 56 L.Ed.2d 132] at least when that interest is not adequately protected by the plaintiff's power to choose the forum, cf. *Shaffer v. Heitner*, 433 U.S. 186, 211, n. 37, [97 S.Ct. 2569, 2583, n. 37, 53 L.Ed.2d 683] (1977); the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies, see *Kulko v. Superior Court, supra*, [436 U.S.] at 93, 98 [, 98 S.Ct. at 1697, 1700]. [—— U.S. at ——, 100 S.Ct. at 564.]

This case fits within the standards laid out in *World-Wide*. The out-of-state defendant, Pacific Hydro, sold directly to the plaintiff a costly and substantial piece of allegedly defective industrial equipment that malfunctioned and allegedly resulted in damages to plaintiff. It was contemplated by the parties that the rig would be used in several states, including Utah.

In addition to the tortious injury within the state, other factors support the fairness of requiring defendant Pacific Hydro to defend the cause of action in Utah. Necessary witnesses are likely to be within this forum. The equipment which is the subject of this suit is largely industrial equipment intended to be sold for use in states other than the home forum of Pacific Hydro. It is not akin to the consumer-type articles sold by small retailers or distributors basically in a local trade area. Although its distribution territory is not nationwide, it is alleged that defendant made sales to customers in several states, including Utah. Pacific Hydro knew that the equipment would be used in this State and could reasonably have foreseen that malfunctioning of the equipment could occur here. Pacific Hydro could have taken appropriate measures to protect itself from a suit, had it desired to do so. Pacific Hydro sent representatives to Utah in connection with its responsibilities relating to the malfunctioning of the drilling rig. These facts suggest it is not burdensome or otherwise unfair for the defendant to be required to appear here.

This State has an interest in providing redress for a Utah plaintiff whenever constitutionally permissible as directed by the long-arm statute. California, the home state of Pacific Hydro, has no more substantial interest in this litigation or contacts with the injury and the parties than Utah and would not be a more fair forum for all parties. Furthermore, the co-defendant manufacturer, Portadrill, has appeared in Utah to respond to plaintiff's claim. It is not in the interest of the efficient administration of justice to force the plaintiff to file a separate action in another state against the distributor where many, if not all, of the same facts would be the subject of relitigation.

The conclusion reached in this case is also in harmony with two decisions of the United States District Court for the District of Utah. In *Mountain States Sports, Inc. v. Sharman*, 353 F.Supp. 613 (D.Utah 1972), the court sustained jurisdiction under § 78–27–24(3) in a case in which all critical events occurred outside the state, but the tortious injury had a foreseeable impact in Utah. In *Engineered Sports Products v. Brunswick Corp.*, 362 F.Supp. 722 (D.Utah

1973), the contacts upon which jurisdiction was based included financial loss in the forum and the foreseeability of the injury based on defendant's knowledge that the product involved would be sold in the forum as a result of defendant's merchandising endeavors.

In sum, jurisdiction can and should be founded on § 78–27–24(3).

HALL, Justice (dissenting):

The majority opinion has the effect of subjecting a non-resident to in personam jurisdiction simply by virtue of his entering into an unsolicited contract of sale with a Utah resident in a foreign jurisdiction. I deem such an extension of the doctrine of "minimum contacts" to be violative of due process.

The "minimum contacts" test was expounded in the landmark case of *International Shoe Co. v. Washington*[1] wherein it was stated:

. . . due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

The court in *International Shoe* further explained that the standards of due process require an evaluation of the quality and nature of the defendant's acts *within the forum state*, the extent to which the defendant thereby enjoyed the protection of the forum's laws, and the relationship between the defendant's activities in the forum and the plaintiff's claim. The court also noted that limited or isolated activities are not sufficient in meeting the requirements of due process.

The doctrine of "minimum contacts" was further elaborated upon in *Hanson v. Denckla*[2] in the manner following:

The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

The main opinion concludes that defendant subjected itself to jurisdiction when it "purposefully contracted with a resident of this State . . . [and] purposefully undertook to supply goods . . . knowing or anticipating that those goods would be used in this State."

Admittedly, the contract was the result of a "purposeful" act on the part of defendant, but an unsolicited business contact *in the state of California* is not to be equated with a "minimum contact" *in the forum state*. This is particularly true in light of the due process standards as laid down in *International Shoe*. As espoused therein, the *quality* and *nature* of the California contract does not lend itself to being classified as a "minimum contact" *in the forum state* as will support jurisdiction. On the contrary, it is not a "contact" *in the forum state* at all.

It is of significance that the main opinion cites no case in point which sanctions such a broad extension of jurisdiction. The search that I have conducted causes me to conclude that there are none. However, a contra view has already been expressed by this Court. In *Pellegrini v. Sachs and Sons*,[3] the court was faced with an almost identical set of facts as are present in this case.[4] In affirming the trial court's dismissal for want of jurisdiction, the Court had this to say:

1. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

2. 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

3. Utah, 522 P.2d 704 (1974).

4. The difference being that plaintiff therein was a resident of California when the purchase was made, then moved to Utah, and thereafter sustained loss or injury and filed suit.

It requires but a moment's reflection to see what practical difficulties could result if the many thousands of retailers, who sell the many thousands of products, which are transported into other states, were required to defend wherever it might be alleged that the product had arrived and caused injury. Consequently we think proper safeguards of the rights of both parties require that jurisdiction should not be predicated solely on the ground that an article sold elsewhere by a dealer may be brought into the state and cause harm.

The majority opinion leaves it most difficult to conceive of a set of facts where jurisdiction would not lie. Such a result is offensive to the basic notions of due process and is inconsistent with the sound policy which encourages commercial interchange between the states.

The main opinion also advances the thought that the "security agreement" entered into by the parties is somehow indicative of defendant's intention to seek the protection of the laws of the State of Utah in its transaction with plaintiff. In reality, the document referred to as a "security agreement" is merely the conditional sales contract of the parties which recites the terms of sale. It is not important as to whether or not it qualifies as a "security agreement" under the Uniform Commercial Code adopted in Utah[5] for it was never filed in Utah or any other state.

I would affirm the trial court's dismissal.

CROCKETT, Chief Justice (dissenting):

I concur in the dissent of Justice Hall; and supplementary thereto make the following comments on the issue involved, and particularly to the ruling projected by Justice Stewart to the effect that "the causing of injury in the state from a product intentionally placed in commerce for distribution to other states is sufficient 'contact' to satisfy due process."

It is my judgment that the finding of jurisdiction wherever there is an injury caused by a product would be an extension of the law contrary to my understanding thereof, as represented by the cases cited in the opinions herein. It would, for all practical purposes, forsake the long respected requirement of minimum contacts, which I submit, all of the soundly decided cases have required, and move toward a formless void of unchartered waters where any distinction as to intra-state jurisdiction would disappear.

When we consider the thousands of manufacturers, and their products, which are involved in commerce throughout our country, it impresses me as being so obvious as not to require exposition thereon that such a rule would infringe upon constitutional interdictions relating to due process of law and the imposition of burdens on interstate commerce. In sum, it is my opinion, that the projected rule would result in interminable mischief, including the invitation to other controls, federal and state.

I would adhere to long established law.

---

5. U.C.A., 1953, 70A–9–101 et seq.